2006-NMCA-035

131 P.3d 97

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Herbert WORRICK, Defendant–Appellant.**

**No. 24,557.**

Court of Appeals of New Mexico.

Jan. 12, 2006.

Certiorari Granted, No. 29,687, March 20, 2006.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Elizabeth Blaisdell, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Cynthia S. Sully, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

ROBINSON, Judge.

{1} Defendant appeals his sentence following his guilty plea to homicide by vehicle

while under the influence, NMSA 1978, § 66–8–101 (1978), a third-degree felony, and aggravated driving under the influence of alcohol, NMSA 1978, § 66–8–102 (2003), a misdemeanor. His conviction stems from a car accident that resulted in the death of a sixteen-year-old boy. The district court sentenced Defendant to six years in prison on the homicide count and dismissed the DWI count on Defendant's motion. The district court found that the offense qualified as a serious violent offense under NMSA 1978, § 33–2–34 (1999), New Mexico's Earned Meritorious Deductions Act (EMDA).

{2} The EMDA provides that a prisoner, who is confined for committing a serious violent offense, is limited to earning four days per month of meritorious deductions on his sentence, often referred to as "good time." § 33–2–34(A)(1). Defendant successfully appealed from that sentence on the grounds that the district court failed to support the serious violent offender designation. This Court stated that while it appeared there was a factual basis for the finding of a serious violent offense, the district court had not made findings to support its determination. *State v. Worrick*, No. 23,748 (N.M.Ct. App. May 9, 2003) (unpublished). On remand, the district court made its findings and entered a second amended judgment and sentence, which reinstated the serious violent offense designation. Defendant appeals, once again challenging only the portion of his sentence that designates this vehicular homicide as a serious violent offense. Defendant contends that the district court's findings do not demonstrate that the offense was committed with an intent to do serious bodily harm, or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm. Defendant argues that again the district court's findings are insufficient as a matter of law to support the serious violent offense designation. As a new issue, Defendant asserts that the district court's determination, that this vehicular homicide was a serious violent offense, infringes upon his right to a jury trial under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

{3} We affirm the district court's designation of Defendant's vehicular homicide as a serious violent offense and find that Defendant is not entitled to a jury trial to determine if his offense was a serious violent offense.

## I. BACKGROUND

{4} On March 2, 2002, Defendant was driving northbound on Valley Drive in Las Cruces. Victim was driving southbound on Valley Drive. Defendant was attempting to make a left-hand turn onto Isaacks Lane, when he collided virtually head on with Victim. The point of impact was well into oncoming traffic. Defendant had never been arrested for driving under the influence before the present incident and had a very minimal record of driving infractions. However, when asked to take a field sobriety test at the scene, Defendant told the police to go ahead and arrest him because he was drunk. Defendant's breath test registered .25/.24. Defendant stated that he had not seen Victim's vehicle approaching and that Victim was driving without his lights on. An expert for the State and for the defense both determined that Victim's lights were on when the crash occurred. When Defendant learned at the scene that Victim was still alive, Defendant said he was going to go home, and someone had to snatch his keys from the ignition to prevent him from continuing to drive.

## II. DISCUSSION

### A. Serious Violent Offense Designation Analysis

{5} We review the district court's actions on an abuse of discretion standard. *See State v. Montoya*, 2005–NMCA–078, ¶ 8, 137 N.M. 713, 114 P.3d 393 (2005) (indicating that the standard of review for actions in designating an offense as a serious violent one is abuse of discretion). Defendant contends that his vehicular homicide conviction should not be designated a serious violent offense. He contends that the district court's findings do not demonstrate that the offense was committed with an intent to do serious harm, or with recklessness in the face of knowledge that one's acts are reasonably

likely to result in serious harm. In *State v. Morales,* 2002–NMCA–016, 131 N.M. 530, 39 P.3d 747, we articulated the types of judgments that a district court must make to designate the crimes listed in Section 33–2–34(L)(4)(n) as serious violent offenses. *Id.* ¶¶ 12–16. This Court concluded that, under Section 33–2–34(L)(4)(n), serious violent offenses include only those offenses which are "committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." *Id.* ¶ 16. We gave an example of the offense at issue here and explained the ways in which it could be viewed as a serious violent offense or not.

> [H]omicide by vehicle always results in death, but it can be committed by one who had only one drink but is thereby less able to drive safely, or it can be committed by one who intentionally and habitually gets drunk to the point of being several times over the legal limit, knowing that he or she must drive in a crowded area and is in no shape to do so, but does so nevertheless.

*Id.* ¶ 15.

{6} In this case, at resentencing, the district court again found that the vehicular homicide was a serious violent offense. In the amended judgment and sentence and commitment to the Corrections Department, the district court stated that "[t]he [c]ourt finds that due to the nature of this offense and the resulting harm this crime is a serious violent offense pursuant to [Section] 33–2–34, NMSA 1978." The district court made three further findings that supported its determination:

1. [V]ictim was a teenager, active in the community and his death has severely impacted his family, friends and school mates.

2. Defendant's breath alcohol level was .25/.24—three times the presumptive level of intoxication (.08).

3. Defendant repeatedly insisted that . . . [V]ictim's vehicle did not have its headlights on which caused . . . Defendant not to see . . . [V]ictim's vehicle. Tests by both the State's expert and an expert hired by the defense proved that

the headlights were in fact on at the time of the collision. [D]efendant was either too intoxicated to notice the headlights before turning in front of . . . [V]ictim's vehicle or he is being deliberately untruthful about the headlights.

{7} Our case is one of first impression because, like the offense described in *Montoya,* 2005–NMCA–078, ¶ 7, this case "falls somewhere between the two extremes described in *Morales,*" although the facts of this case fall even farther toward non-serious-violent-offense extreme than did the facts of *Montoya.* Thus, the question we must answer is whether the facts were egregious enough and the findings specific enough so that the district court could have properly found Defendant's crime of vehicular homicide to be a serious violent offense.

{8} *Morales* does not require the district court to enter findings containing specific terminology. *See State v. Cooley,* 2003–NMCA–149, ¶¶ 18–19, 134 N.M. 717, 82 P.3d 84. Here, the district court did not specifically state that Defendant acted with recklessness in the face of knowledge that his acts were reasonably likely to result in serious harm. *See Morales,* 2002–NMCA–016, ¶ 16. However, the record supports this finding, and it is clear from the second and third numbered factors that the district court believed that Defendant's actions were reckless in the face of knowledge that his acts were reasonably likely to result in serious harm.

{9} We, therefore, review the facts and circumstances before the district court. The district court stated that it considered the factual basis for the plea, the presentence report, the statement of the family and friends of Victim, and the statements of Defendant in making its determination. In this case, the prosecutor noted in the presentence report that there was information that Defendant habitually drank to the point of intoxication two times a week, but denied the need for alcohol abuse counseling. The showing at sentencing was that Defendant was driving with a blood alcohol level of .25/.24, three times the level that is presumed

to show intoxication in New Mexico. The district court also noted that Defendant claimed that Victim had been driving with his lights off, which was why he could not see Victim, when indeed Victim did have his headlights on. This seems to indicate that either Defendant was so intoxicated that he could not see the oncoming car with its headlights on, or he was dishonest about not seeing Victim's headlights on in order to downplay his culpability for the collision and death. The fact that Defendant would lie at the scene about how the accident happened shows a consciousness of guilt that would allow the district court to find a level of awareness on Defendant's part that his actions were likely to cause harm.

{10} The district court relied on the finding that Defendant was driving while extremely intoxicated, with a breath alcohol level of .25/.24, three times the minimum per se limit. When taken together with Defendant's admission that the police should arrest him because he was drunk, these facts show that Defendant knew he was too drunk to be on the road and demonstrate his obvious understanding of his inability to drive a vehicle safely at that period of time. Under these circumstances, especially when taken together with Defendant's announced intent to drive away, the district court could find that Defendant was a person with knowledge that his acts were reasonably likely to result in serious harm.

{11} Next, the district court relied on the finding that either Defendant was so drunk he could not see that Victim's headlights were on before turning in front of him, or that he was being dishonest about the circumstances to mitigate his own actions. Either conclusion leads to an inference that Defendant had knowledge that his acts were reasonably likely to result in serious harm because, either way, he was too drunk to appreciate his actions.

{12} Defendant claims that the district court erred when it determined that the offense of vehicular homicide was a serious violent offense under Section 33–2–34 of the EMDA. At the sentencing hearing, the district court heard testimony from friends and relatives of Victim. The district court im-posed a six-year sentence for the vehicular homicide, as a third-degree felony, resulting in the death of a human being under NMSA 1978, § 31–18–15(A)(4) (1999). *See State v. Guerro*, 1999–NMCA–026, ¶ 11, 126 N.M. 699, 974 P.2d 669 (holding that Section 31–18–15(A)(4) encompasses vehicular homicide). The district court then determined that the crime was a serious violent offense under the EMDA.

{13} In *State v. Wildgrube*, 2003–NMCA–108, 134 N.M. 262, 75 P.3d 862, this Court held that evidence of the defendant's drinking prior to the incident, and the manner of his driving under the circumstances, was sufficient to support the findings that the defendant drove under the influence and recklessly. *Id.* ¶ 37. On the night in question, the defendant had consumed a significant amount of alcohol in a short period of time and compounded that problem by driving in a reckless manner such that, while looking away from the road, he drove into and killed a person walking on the shoulder of the roadway. *See id.* ¶ 38. Our Court held that the findings were sufficient to support the determination that the vehicular homicide was a serious violent offense, and the district court did not abuse its discretion. *Id.* We held to a like effect on less egregious facts in *Montoya*, 2005–NMCA–078, ¶¶ 7–10.

{14} In our case, although there was no history of DWI offenses, there was evidence of considerable drunkenness as well as sufficient evidence of Defendant's knowledge of his drunkenness. There were also findings tied to these facts. Through criminal sentencing, New Mexico courts must decisively express society's disapproval of the needless killing of innocent victims by the reckless acts of drunk drivers. But at the same time, New Mexico courts must also honor the legislative intent, which was not to make vehicular homicide a listed serious violent offense, such as those found in Section 33–2–34(L)(4)(a) through (m), thereby demonstrating that some vehicular homicides are not serious violent offenses. To the extent that the district court in this case believes that all vehicular homicides committed while DWI are deserving of serious violent offense designation, such views must be subordinated

to the law, which is otherwise. However, because the district court expressly recognized that it is a legislative function to designate the offense as a serious violent one as a matter of law, because there was sufficient evidence to support the serious violent offense designation, and because the import of the district court's findings was that the offense caused serious harm and was committed with recklessness in the face of knowledge that Defendant's acts were reasonably likely to result in serious harm, we affirm the district court's designation of Defendant's crime as a serious violent offense.

## B. Impact of *Blakely* on a Judicial Finding That a Felony is a Serious Violent Offense

 {15} Defendant argues that the district court's determination of his crime as a serious violent offense increased his penalty and, thereby, violated Defendant's right to a jury trial under *Blakely*. We disagree.

{16} In *Montoya*, 2005–NMCA–078, this Court held that the defendant was not entitled to a jury trial in determining whether the offense of vehicular homicide committed while driving intoxicated (DWI) was a serious violent offense. *Id.* ¶ 10. This Court's designation of the defendant's crime as a serious violent offense simply narrowed the availability of good time credit against the defendant's sentence and did not increase sentencing exposure above the statutory maximum. *Id.* ¶ 15. The defendant's imposed sentence was the basic sentence without any aggravating factors. *Id.* ¶ 14. At most, the serious violent offense sentencing statute merely imposed mandatory increased minimum sentence. § 31–18–15(A)(4); § 66–8–101(C)–(D).

{17} Consequently, in our case, Defendant's sentence was not aggravated by being labeled a serious violent crime, and the effect of the EMDA did not change anything with regard to the maximum sentence. Defendant's sentence for vehicular homicide was six years. This was the basic sentence without any aggravating factors. *See Montoya*, 2005–NMCA–078, ¶ 14.

 {18} Increasingly, we see Defendant's claims on appeal concerning the EMDA, its application, and whether a defendant is fully informed of his or her liabilities under the Act prior to entering a plea. We believe that full disclosure of potential application of the EMDA and the likely effect on a particular sentence prior to a plea should be a "best practice" in New Mexico's courts.

## III. CONCLUSION

{19} We hold that Defendant is not entitled to a jury trial to determine if the crime he committed was a serious violent offense, and we affirm the district court's designation of Defendant's vehicular homicide as a serious violent offense.

{20} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and RODERICK T. KENNEDY, Judges.