Certiorari Denied, No. 31,841, July 30, 2009

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-098**

**Filing Date: June 25, 2009**

**Docket No. 28,166**

**STATE OF NEW MEXICO,**

 **Plaintiff-Appellee,**

**v.**

**TIMOTHY SOLANO,**

 **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Michael E. Vigil, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Steven S Suttle, Special Counsel
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Mary A. Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

OPINION

**CASTILLO, Judge.**

**{1}** Defendant challenges the district court's designation of his conviction for third degree vehicular homicide as a serious violent offense for the purposes of the Earned Meritorious Deductions Act (the EMDA), NMSA 1978, § 33-2-34 (2004) (amended 2006). We conclude that the district court's designation was not an abuse of discretion because (1)

the factual findings were legally sufficient to satisfy this Court's requirements in *State v. Morales*, 2002-NMCA-016, 131 N.M. 530, 39 P.3d 747 (filed 2001) and (2) substantial evidence supported those findings. Accordingly, we affirm the district court.

## I.     BACKGROUND

{2}     On July 27, 2005, Defendant struck and killed the victim with his vehicle. Defendant's blood alcohol level tested at .23 and .24. On August 12, 2005, Defendant was charged in district court with one count of homicide by vehicle, contrary to NMSA 1978, Section 66-8-101 (2004). Defendant waived indictment, pled guilty, and judgment was entered on August 15, 2005. The district court committed Defendant to the corrections department for sixty days for the purposes of diagnosis and evaluation.

{3}     The sentencing hearing was held on November 23, 2005, during which the district court heard from the victim's family. The State recommended the maximum sentence. The district court imposed the maximum sentence and designated the conviction to be a serious violent offense, thus limiting the amount of good time credit that Defendant could earn. The district court commended Defendant for taking responsibility for his actions and suspended two years of the sentence based on this and Defendant's remorse.

{4}     Defendant appealed the serious violent offender designation to this Court. By memorandum opinion, this Court remanded the matter back to the district court because the findings supporting the serious violent offense designation were insufficient to satisfy the established legal standard. *State v. Solano*, No. 26,403, slip op. at 3-4 (N.M. Ct. App. July 24, 2007). On remand, the district court held a second sentencing hearing. The court made additional findings and imposed the same sentence, including the serious violent offense designation. Defendant again appeals his sentence.

## II.     DISCUSSION

{5}     Defendant makes two arguments in the current appeal. First, Defendant contends that the district court's findings on remand were again insufficient to support a serious violent offense designation. Second, Defendant argues that the district court's serious violent offense designation was not supported by substantial evidence. In addition, Defendant and the State dispute the standard for our review. We begin with the standard of review and a brief overview of the EMDA, and then we turn to Defendant's arguments.

### A.     Standard of Review

{6}     Defendant argues that we apply both a de novo and a substantial evidence standard. He states that we consider de novo whether the district court's findings are in compliance with the EMDA and then consider whether the designation was supported by substantial evidence. The State contends that we conduct our review for abuse of discretion. Although we agree with the State that the proper standard is abuse of discretion, we observe that

2

Defendant's approach effects the same result.

{7}     Our Supreme Court has explained that the judiciary has no role in the administration of the EMDA apart from exercising "discretion to determine whether the nature of the offense and the resulting harm in a particular factual context justify categorizing the offense as a serious violent offense." *State v. Rudolfo*, 2008-NMSC-036, ¶ 37, 144 N.M. 305, 187 P.3d 170. Nevertheless, "[a]lthough the determination that a crime that falls within the district court's discretionary authority under the EMDA as a serious violent offense is a discretionary act, the district court will abuse its discretion if it acts contrary to law." *State v. Scurry*, 2007-NMCA-064, ¶ 4, 141 N.M. 591, 158 P.3d 1034. In addition, a district court abuses "its discretion when its decision is not supported by substantial evidence." *State v. Montoya*, 2005-NMCA-078, ¶ 8, 137 N.M. 713, 114 P.3d 393. Thus, we review the district court's findings and subsequent serious violent offender designation "for sufficient evidence, for legal error, as well as for an untenable choice between or among alternatives." *State v. Gonzales*, 2005-NMSC-025, ¶ 25, 138 N.M. 271, 119 P.3d 151 (describing the scope of appellate review under the abuse of discretion standard).

{8}     We now turn to the relevant language of the EMDA and its accompanying case law.

## B.     The EMDA

{9}     Under Section 33-2-34, a prisoner may earn meritorious deductions under certain circumstances. If the offense is a nonviolent offense, the defendant may earn up to thirty days per month of time served. Section 33-2-34(A)(2). If the offense of conviction is designated as a serious violent offense, however, the sentence reduction is limited to no more than four days per month of time served. Section 33-2-34(A)(1). A "nonviolent offense" is defined as "any offense other than a serious violent offense." Section 33-2-34(L)(3). A "serious violent offense" is defined in two ways. Section 33-2-34(L)(4)(a) through (n) enumerates specific crimes that are per se serious violent offenses—crimes that are designated serious violent offenses regardless of the circumstances. Section 33-2-34(L)(4)(o) lists several other specific crimes that may be considered serious violent offenses "when the nature of the offense and the resulting harm are such that the court judges the crime to be a serious violent offense for the purpose of this section." Included among these discretionary serious violent offenses is Defendant's crime—third degree homicide by vehicle, as prohibited by Section 66-8-101. *See* § 33-2-34(L)(4)(o)(14).

{10}    This Court has previously addressed the differences between the per se serious violent offenses under Section 33-2-34(L)(4)(a) through (n) and the discretionary designations under Section 33-2-34(L)(4)(o). In order to designate the conduct of a particular defendant as a serious violent offense under the discretionary category, the district court must determine that the crime was "committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." *Morales*, 2002-NMCA-016, ¶ 16. This factual basis for designation of a serious violent offense must be reflected in findings made by the district court. *Id.* ¶¶ 17-18. This Court has since clarified the requirement for such findings and has explained that a district court "need not express its findings in the *Morales*

3

language as long as the findings are consistent with the *Morales* standard." *Montoya*, 2005-NMCA-078, ¶ 8. Turning to the facts of the present case, we consider the sufficiency of the district court's findings.

## C.       The District Court's Findings

{11}    The district court made two findings relevant to the *Morales* criteria:

> This sentence finds that the offense was committed in a physically violent manner with recklessness in the face of knowledge that his acts were reasonably likely to result in serious harm.
>
> Th[is c]ourt [has] consider[ed] [Defendant's] prior history of alcohol abuse along with prior criminal history involving alcohol related offenses not used to enhance his sentence. The [c]ourt makes the specific finding [that Defendant's] actions amount to an offense committed in a physical violent manner in that he crossed the center and struck the victim, who was on a bicycle and propelled her through the air and into the bed of his truck.

Defendant first argues that the district court's factual findings in the post-remand order do not indicate "why this particular instance of vehicular homicide was, based on the uncontested facts, more egregious than any other vehicular homicide case." As we have stated, the serious violent offense inquiry rests on two factors: (1) the physically violent manner in which the crime was committed and (2) the level of intent demonstrated by the defendant's actions. *See Morales*, 2002-NMCA-016, ¶ 16. Defendant cites no authority to suggest that the district court is further required to find that the particular offense was "more egregious" than other similarly categorized offenses, and we therefore assume that no such authority exists. *See State v. Vaughn*, 2005-NMCA-076, ¶ 42, 137 N.M. 674, 114 P.3d 354.

{12}    Defendant next argues that the facts recited by the district court do not establish the *Morales* criteria. Specifically, Defendant contends that the district court's reliance on his history of alcoholism and previous alcohol-related convictions do not support an inference of the requisite intent and that the district court's recitation of the facts surrounding the manner of the victim's death do not establish that this vehicular homicide was committed in a physically violent manner. We disagree.

### 1.       History of Alcohol Abuse

{13}    Defendant provides several bases for the argument that his history does not demonstrate the requisite intent. He first argues that to rely on past convictions to support a serious violent offense designation is inappropriate because he was already punished for those offenses. He then asserts that the Legislature was undoubtedly aware that it is not uncommon for perpetrators of vehicular homicide to have prior convictions and had it intended for the district court to consider past offenses, it would have included vehicular homicide as a per se serious violent offense. Next, Defendant points to Section 66-8-101(D) and argues that because the Legislature does not permit a sentence enhancement to be based

4

on a vehicular homicide conviction that is more than ten years old, the Legislature also did not intend for convictions that are greater than ten years old "to form the basis for the imposition of further punishment." Finally, Defendant relies on a United States Department of Transportation report—referred to for the first time on appeal—to contend that "it is quite unlikely that a given drunk driving episode will result in great bodily harm." During this appeal, the State filed a motion to strike references to the study from Defendant's brief in chief because the report was not offered as evidence during the district court proceedings or made a part of the record. Although we denied the State's motion to strike the references to the report, we did so with the proviso that we would not consider the report on appeal. Because Defendant's argument is otherwise unsupported, we do not address it.

**{14}** We initially observe that Defendant's first three arguments fail to explain why a defendant's extensive history of abusing alcohol would not permit an inference of knowledge or recklessness. The first and third arguments relating to past convictions and additional punishment have been addressed by this Court and our Supreme Court in the past. "[T]he EMDA does not change the maximum penalty for a defendant's crime or impose an additional penalty. Rather, the statute affects the amount of time by which [a] defendant through his own good conduct could decrease his sentence." *State v. Andazola*, 2003-NMCA-146, ¶ 21, 134 N.M. 710, 82 P.3d 77 (internal quotation marks and citation omitted); *see also State v. Schoonmaker*, 2008-NMSC-010, ¶ 53, 143 N.M. 373, 176 P.3d 1105 ("Limiting a defendant's ability to earn meritorious deductions does not result in punishment beyond that which has been statutorily established for the offense."). Thus, considering a defendant's history—criminal or otherwise—does not lead to impermissible further punishment.

**{15}** Defendant's second argument appears to be that because so many vehicular homicides are caused by repeat offenders and vehicular homicides are not classified as per se offenses, the Legislature intended for the courts to ignore evidence of past transgressions. Defendant maintains that any other interpretation of the Legislature's intent transforms all vehicular homicides into serious violent offenses. This Court explained in *Morales*, however, that discretionary serious violent offenses "are characterized by multiple ways of committing the offense, some intentional and some not, and some utilizing physical force and some not." 2002-NMCA-016, ¶ 15. Thus, some incidents of vehicular homicide qualify as serious violent offenses and some do not. It is only the evidence of a particular incident that qualifies a defendant's crime as a discretionary serious violent offense. We conclude that the particular circumstances of Defendant's history with alcohol and the law was relevant to the *Morales* inquiry into intent, and we are satisfied that this conclusion does not generally elevate vehicular homicide to a per se violent offense. *See State v. Worrick*, 2006-NMCA-035, ¶ 9, 139 N.M. 247, 131 P.3d 97 (considering the defendant's extremely high blood alcohol content at the time of the accident as well as that the defendant "habitually drank to the point of intoxication two times a week"); *see also Montoya*, 2005-NMCA-078, ¶¶ 9-10 ("The knowledge aspect is shown by the long, prior history of a drinking problem."); *State v. Wildgrube*, 2003-NMCA-108, ¶ 37, 134 N.M. 262, 75 P.3d 862 (evaluating, for the purposes of the EMDA, the defendant's previous four arrests for alcohol-related offenses and two convictions for driving while intoxicated).

### 2. Physically Violent Manner

**{16}** Defendant next argues that the "fact that [Defendant] crossed the center and hit a bicyclist, while ostensibly going to the manner in which the crime was committed, does not sufficiently establish that [Defendant's] act was committed in a particularly violent manner." Defendant also contends that nearly all vehicular homicides cause a particularly violent death for the victim and that the district court impermissibly relied on an element of vehicular homicide in order to designate the crime a serious violent offense.

**{17}** This Court has not previously been required to define "physically violent manner." The *Morales* Court, however, acknowledged that even though the record in that case was sparse, there might have been a factual basis for the findings necessary to establish a serious violent offense. 2002-NMCA-016, ¶ 18. Although *Morales* ultimately remanded the issue to the district court to make the findings on the record, this Court observed that the defendant "used physical force with his daughter in a manner that indicated an intent to do so" and that the victim suffered some harm. *Id.* Thus, the term "physically violent manner" includes the intentional use of force that results in some harm. In the present case, the district court's findings—findings that were missing in *Morales*—directly address the use of physical force, intent, and harm to the victim. *See id.* ¶ 16 ("[T]he [L]egislature wanted to reserve the serious violent offenses for those found by the trial judge to be committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm. Of course, the statutory factor of actual resulting harm may be considered in determining a defendant's intent." (internal quotation marks omitted)). Defendant recklessly veered across the center line and struck the victim with sufficient force to propel her into the bed of Defendant's truck. These facts directly relate to whether force was used in a violent manner. *See id.* ¶ 18.

**{18}** Defendant additionally insists that the district court is required to consider the physically violent manner in which the offense was committed and not the physically violent death of the victim. In *State v. Loretto*, 2006-NMCA-142, 140 N.M. 705, 147 P.3d 1138, this Court explained that "[s]omething more than the mere elements in the definition of [the crime] need to be shown to designate the crime as a serious violent offense." *Id.* ¶ 18. One of the elements of vehicular homicide is that the defendant commit homicide by using a motor vehicle. *See* § 66-8-101(A). The facts set out in the preceding paragraphs demonstrate that the district court considered more than the mere use of a vehicle to commit the homicide: Defendant recklessly operated the truck at a high rate of speed that caused the victim, once struck, to be "propelled . . . through the air and into the bed of Defendant's truck." We are thus satisfied that the findings sufficiently detail the violent manner in which the crime was committed and not merely the elements of the crime or the violent nature of the victim's death.

**{19}** We now turn to consider whether these findings are supported by sufficient evidence.

### D. Sufficiency of the Evidence

6

**1.**	***Begay v. United States***

**{20}**	The focus of Defendant's sufficiency argument is that this Court should reconsider the application of a serious violent offense designation to the crime of vehicular homicide in light of the recent holdings and analysis of *Begay v. United States*, ___ U.S. ___, 128 S. Ct. 1581 (2008). In *Begay*, the Supreme Court of the United States was concerned with whether the crime of driving under the influence of alcohol should be considered a violent felony as described by 18 U.S.C. § 924(e)(1) (2000) (amended 2005 and 2006) of the Armed Career Criminal Act (ACCA). *Begay*, ___ U.S. at ___, 128 S. Ct. at 1583. 18 U.S.C. § 924(e)(1) provides that

> [i]n the case of a person who violates [18 U.S.C. §] 922(g) [(2002)] of this title and has three previous convictions by any court referred to in [18 U.S.C. §] 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person[.]

The district court in *Begay* determined that the defendant's three prior convictions for driving under the influence of alcohol constituted violent felonies and imposed the resulting mandatory fifteen-year prison term. ___ U.S. at ___, 128 S. Ct. at 1584. The Supreme Court of the United States disagreed and held that Congress did not intend "to bring within the statute's scope these kinds of crimes, far removed as they are from the deliberate kind of behavior associated with violent criminal use of firearms." *Id.* at 1587. Defendant argues that the *Begay* construction of the term "violent felony" leads to a conclusion that the EMDA has been improperly construed by New Mexico courts to include overly general and common occurrences of vehicular homicide. We are unpersuaded that *Begay* requires us to reconsider our previous constructions of the EMDA.

**{21}**	We first observe that under the ACCA, driving under the influence is not an offense specifically listed as a violent felony. The ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), provides a list of examples of crimes that are violent felonies such as burglary, arson, extortion, or crimes involving explosives. This list is clearly not exhaustive, *see* 18 U.S.C. § 924(e)(2)(B) and, therefore, the *Begay* Court was required to analogize the crime of driving under the influence to the other exemplar crimes that are listed in the ACCA. ___ U.S. at ___, 128 S. Ct. at 1584-85 ("In our view, the provision's listed examples—burglary, arson, extortion, or crimes involving the use of explosives—illustrate the kinds of crimes that fall within the statute's scope. Their presence indicates that the statute covers only *similar* crimes, rather than *every* crime that presents a serious potential risk of physical injury to another." (internal quotation marks and citation omitted)). Such analogy is not required in the present case because third degree vehicular homicide is an offense listed in the EMDA as a discretionary serious violent offense. *See* § 33-2-34(L)(4)(o)(14). There is thus no need to compare Defendant's crime with the other listed crimes because the Legislature clearly intended to include vehicular homicide within the scope of the EMDA when the district court "judges the crime to be a serious violent offense." *Id.* **{22}** The *Begay* Court was also concerned

7

that statutes prohibiting driving under the influence "typically do not insist on purposeful, violent, and aggressive conduct; rather, they are, or are most nearly comparable to, crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all." ___ U.S. at ___, 128 S. Ct at 1586-87. The examples of violent felonies in the ACCA, however, "all typically involve purposeful, violent, and aggressive conduct." *Id.* at ___, 128 S. Ct. at 1586 (internal quotation marks and citation omitted). Defendant makes a similar point that "[b]y including third[ ]degree homicide in a statute where the intent requirement is otherwise specific, the [L]egislature evidently intended for there to be a somewhat heightened intent requirement for a particular vehicular homicide case to constitute a serious violent offense." The concerns of the *Begay* Court and Defendant were addressed by this Court's holding in *Morales*.

**{23}** In *Morales*, this Court compared the list of per se offenses from Section 33-2-34(L)(4)(a) through (n) with the discretionary offenses described in Section 33-2-34(L)(4)(o). We observed that the per se offenses "all involve an intent to do the harm prohibited by the statute, or a specific intent to kill or injure, or knowledge that one's acts are reasonably likely to cause serious harm." *Morales*, 2002-NMCA-016, ¶ 14. The discretionary offenses, however, "are characterized by multiple ways of committing the offense, some intentional and some not, and some utilizing physical force and some not." *Id.* ¶ 15. We concluded that

> the [L]egislature wanted to reserve the serious violent offenses for those found by the trial judge to be committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm.

*Id.* ¶ 16. Thus, in order for one of the discretionary crimes to be designated as a serious violent offense, the district court must find that it was committed with "an intent to do serious harm" or "with recklessness." *Id.*

**{24}** Defendant argues that recklessness is an insufficient level of intent to support a serious violent offense designation. For support, Defendant again cites *Begay*, in which the Supreme Court of the United States rejected the application of a recklessness standard because unlike the other crimes listed in the ACCA, the act of driving drunk "need not be purposeful or deliberate." ___ U.S. at ___, 128 S. Ct. at 1587. Taking our cue from the *Begay* Court and comparing vehicular homicide to the other enumerated discretionary serious violent offenses, we conclude that recklessness is an acceptable level of intent. Other discretionary crimes listed under Section 33-2-34(L)(4)(o) incorporate the recklessness standard or in some circumstances, the lesser negligence standard. *See State v. Yarborough*, 120 N.M. 669, 674, 905 P.2d 209, 214 (Ct. App. 1995) (requiring conduct that is "reckless, wanton, or willful" in order to establish involuntary manslaughter (internal quotation marks and citation omitted)), *aff'd*, 1996-NMSC-068, 122 N.M. 596, 930 P.2d 131; *see also* NMSA 1978, § 30-6-1(D), (E) (2005) (amended 2009) (identifying the intent for child abuse as "knowingly, intentionally or negligently, and without justifiable cause). Indeed, recklessness is even sufficient for at least one of the per se offenses under Section 33-2-34(L)(4)(a) through (n). *See* NMSA 1978, § 30-3-8(B) (1993) ("Shooting at or from a motor vehicle

8

consists of willfully discharging a firearm at or from a motor vehicle with reckless disregard for the person of another.").

**{25}** *Begay* also focused on the unique purpose of the ACCA: "the [ACCA] focuses upon the special danger created when a particular type of offender—a violent criminal or drug trafficker—possesses a gun." ___ U.S. at ___, 128 S. Ct. at 1587. Because the ACCA focuses on preventing certain types of offenders from owning guns, the *Begay* Court had "no reason to believe that Congress intended to bring within the statute's scope these kinds of crimes, far removed as they are from the deliberate kind of behavior associated with violent criminal use of firearms." *Id.* The purpose of the EMDA is entirely different: "In the EMDA, the Legislature has established a detailed set of guidelines for both the courts and the corrections department to administer in the ultimate determination of a prisoner's eligibility for good time reductions from his period of confinement." *Rudolfo*, 2008-NMSC-036, ¶ 35. The purpose of the EMDA is not to prevent certain types of offenders from obtaining weapons. Instead, the EMDA is designed to reduce the period of confinement by a designated number of days each month of time served for the perpetrators of certain offenses that have been specifically delineated by the Legislature. We therefore see every reason to believe that the Legislature intended to bring certain instances of vehicular homicide within the scope of the EMDA and are not persuaded that *Begay* requires a different result.

## 2.     Evidence at Sentencing

**{26}** In addition to relying on *Begay*, Defendant also argues that the evidence was simply insufficient to establish that his conduct constituted a serious violent offense. This argument is distinct from Defendant's earlier argument regarding the adequacy of the district court's findings. *See Scurry*, 2007-NMCA-064, ¶ 4 (declining to address the sufficiency of the evidence after concluding that the findings were insufficient as a matter of law). Having determined that the district court's findings are legally adequate, we review the record to ascertain whether the facts support the findings and hence, the serious violent offense designation.

**{27}** As we have stated, in order to designate a particular crime as a serious violent offense, the district court must find that it was "committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." *Morales*, 2002-NMCA-016, ¶ 16. Defendant argues that in addition to the *Morales* criteria, the State must also demonstrate that this particular vehicular homicide differs from other homicides caused by intoxicated or otherwise impaired drivers. We are satisfied that the *Morales* criteria adequately separate the average vehicular homicide from a properly designated serious violent offense and, thus, we decline to consider whether Defendant's acts were "notably worse than any other such case."

**{28}** *Morales* explained how vehicular homicide can be committed with and without the requisite intent:

9

[H]omicide by vehicle always results in death, but it can be committed by one who had only one drink but is thereby less able to drive safely, or it can be committed by one who intentionally and habitually gets drunk to the point of being several times over the legal limit, knowing that he or she must drive in a crowded area and is in no shape to do so, but does so nevertheless.

*Id.* ¶ 15. In the present case, the district court based the serious violent offense designation in part on Defendant's history of alcoholism and alcohol-related offenses. This history is supported by the facts revealed at the sentencing hearings. *See Montoya*, 2005-NMCA-078, ¶¶ 8-9 (reviewing the facts and circumstances before the district court to determine if substantial evidence supported the serious violent offense designation).

**{29}** Apart from the two convictions for driving under the influence that were used to enhance the sentence, Defendant also had earlier alcohol-related accidents and encounters with the police, ranging back at least as far as 1993. One of these accidents resulted in bodily injury to a victim. The district court additionally noted that Defendant had many opportunities for treatment but failed to embrace them. After remand by this Court, the district court explained that the serious violent offense designation was based on Defendant's history with alcohol, his refusal to address the problem, and his insistence on continuing to drive while drunk. The district court further referred to evidence that other people had tried to prevent Defendant from driving on the day of the accident. To summarize, Defendant had a long history of alcohol abuse, previous experience with injuring a person because of alcohol impairment, and he disregarded advice to refrain from driving while under the influence. We are satisfied that this evidence is sufficient to establish that Defendant acted with recklessness in the face of knowledge that his acts were reasonably likely to result in serious harm. *See Wildgrube*, 2003-NMCA-108, ¶ 38; *Morales*, 2002-NMCA-016, ¶¶ 15, 16.

**{30}** We further hold that the evidence supported the district court's finding that Defendant used physical force and that actual harm resulted. *See Morales*, 2002-NMCA-016, ¶ 18. Although we acknowledge that any vehicular homicide employs some level of physical force, the district court made findings that are specific to the force used in and the harm caused by *this* particular vehicular homicide: Defendant drove recklessly while intoxicated, crossed the center line, and struck the victim on a bicycle at such a rate of speed that she was thrown over the truck and into Defendant's truck bed. In addition, the district court considered the "resulting harm" by accepting the statements of the victim's family regarding the emotional impact of the victim's death. *See id.* ¶ 13 ("[R]esulting harm must be considered along with the nature of the offense to determine if a listed offense qualifies."). The district court did not abuse its discretion by relying on these facts to establish that the Defendant acted in a physically violent manner. *See Wildgrube*, 2003-NMCA-108, ¶ 38 (concluding that the evidence supported a serious violent offense designation when the defendant recklessly drove while intoxicated, looked away from the road, and hit and killed a pedestrian).

**{31}** Review of the record demonstrates that the facts supported the district court's findings and the designation of Defendant's conduct as a serious violent offense.

10

**III.    CONCLUSION**

**{32}**    We affirm the district court.

**{33}    IT IS SO ORDERED.**

                            _____

                            **CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**LINDA M. VANZI, Judge**

Topic Index for *State v. Solano*, No. 28,166

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-DG | Driving While Intoxicated |
| CL-VH | Vehicular Homicide |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-ES | Enhancement of Sentence |
| CA-GT | Good Time |
| CA-JS | Judgment and Sentence |
| CA-SE | Substantial or Sufficient Evidence |
| | |
| **EV** | **EVIDENCE** |
| EV-SS | Substantial or Sufficient Evidence |