This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                    **No. 30,712**

**SAMUEL PADILLA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Eugenio S. Mathis, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

David Henderson
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**SUTIN, Judge.**

Under the provisions of the Earned Meritorious Deductions Statute, NMSA 1978, § 33-2-34 (2006), a prisoner confined in a correctional facility may earn meritorious deductions of time served, provided that certain requirements are met. A prisoner confined for committing a "nonviolent offense" may earn up to a maximum of thirty days per month of time served, whereas a prisoner confined for committing "a serious violent offense" may earn up to a maximum of four days per month of time served. Section 33-2-34(A)(1), (2); *see* § 33-2-34(L)(3), (4) (defining "nonviolent offense" and "serious violent offense" respectively). Section 33-2-34(L)(4) enumerates fourteen per se serious violent offenses. *See* § 33-2-34(L)(4)(a) to (n). Additionally, it provides that serious violent offenses include "any of the [enumerated list of] offenses, when the nature of the offense and the resulting harm are such that the court judges the crime to be a serious violent offense[.]" Section 33-2-34(L)(4)(o). Included among the latter designation are the crimes of "third degree homicide by vehicle or great bodily injury by vehicle[.]" Section 33-2-34(L)(4)(o)(14).

In this appeal, Defendant Samuel Padilla challenges the sufficiency of the evidence used to support the district court's designation of his convictions of vehicular homicide and great bodily injury by vehicle as serious violent offenses pursuant to Section 33-2-34(L)(4)(o)(14). Additionally, he contends that the district court's designation violated his constitutional right to a jury. We affirm.

**BACKGROUND**

In April 2009, Defendant, driving a pick-up truck on SR-68, mile marker 33, in Taos County, commonly known as "the Horse Shoe," crossed the center yellow line into oncoming traffic and collided head on with a van driven by Mark Espinoza (Decedent) and carrying passengers Pauline Espinoza, Decedent's wife, and their three children. Decedent was pronounced dead at the scene, two of the children were airlifted from the scene to the University of New Mexico Trauma Center, and Mrs. Espinoza and her youngest child were transported to the emergency room of a local hospital by ambulance. Defendant was transported to the hospital, where he admitted to having consumed alcohol prior to the crash. Defendant was arrested and charged with one count of homicide by vehicle (under the influence of alcohol or drugs), four counts of great bodily harm by vehicle (under the influence of alcohol or drugs), aggravated driving under the influence, careless driving, failure to maintain a traffic lane, and failure to have a safety belt properly fastened.

In May 2010, Defendant pleaded guilty to one count of homicide by vehicle (driving while intoxicated) and two counts of great bodily harm by vehicle (driving while intoxicated). The plea agreement provided that two counts of great bodily harm by vehicle would run concurrent to one another and consecutive to the homicide by vehicle count for a "total exposure" of nine years. The district court accepted

3

Defendant's plea agreement. The court sentenced Defendant to nine years according to the agreement and also designated Defendant's convictions as "serious violent offenses" pursuant to Section 33-2-34(L)(4)(o)(14).

After examining Defendant's arguments, we conclude that the district court did not abuse its discretion in designating the offenses as serious violent offenses because there was sufficient evidence and record support for the findings. We also hold that because the court's findings did not enhance Defendant's sentence, his constitutional rights were not violated by the court's designation. Consequently, we affirm Defendant's sentence.

**DISCUSSION**

Defendant contends that for the district court to determine that the offenses were serious violent offenses, the State was required to prove by a preponderance of the evidence that the offenses qualified as such. He argues that the State failed to meet this burden when, at Defendant's sentencing hearing, it did not provide "any substantial evidence to prove" that he committed the crimes "in a physically violent manner" or that he "knew his actions were reasonably likely to result in serious harm[.]" Accordingly, he requests that this Court reverse the district court's designation under Section 33-2-34(L)(4)(o)(14).

4

The district court may designate a crime as a serious violent offense if it determines that the crime was "committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." *State v. Morales*, 2002-NMCA-016, ¶ 16, 131 N.M. 530, 39 P.3d 747. The designation falls within the district court's discretion and the determination will be affirmed if it is supported by sufficient evidence in the record. *See State v. Solano*, 2009-NMCA-098, ¶¶ 7, 26, 146 N.M. 831, 215 P.3d 769. The State contends that "[t]he record is more than sufficient to support the court's conclusion that [D]efendant committed a serious violent offense based on his intentional, repeated conduct, the risks to which [D]efendant recklessly subjected others, and the resulting harm to [Decedent's] family." Defendant has not provided citation to any statute or on-point case law to persuade us that the State was required to prove, by "a preponderance of the evidence" at sentencing, that the offenses were serious violent offenses. Therefore, we review the record to determine whether the court's designation of Defendant's crimes as serious violent offenses was supported by substantial evidence. *See id.* ¶ 7 (stating that an abuse of discretion occurs when the court's designation of a crime as a serious violent offense is not supported by substantial evidence).

The record reflects that the district court designated Defendant's crimes as serious violent offenses based on Defendant's history as a juvenile, his history of being involved with alcohol, the fact that Defendant committed the act on a day that he had earlier appeared in juvenile drug court, the extent of his intoxication and the level of alcohol in his system shortly after the accident occurred, and the nature of the harm, including the loss of life and the injuries to other occupants in Decedent's vehicle. Further, the court stated that "[t]his is a case that falls squarely within the case law that holds that vehicular homicide can be a serious violent felony."

Among the portions of the record that support the district court's designation of Defendant's crimes as serious violent offenses are Defendant's written plea agreement, his verbal assent to the plea agreement at the plea hearing, and his own sentencing memorandum. For instance, facts regarding Defendant's history as a juvenile and his history of being involved with alcohol were presented to the court through Defendant's own sentencing memorandum. In his memorandum to the court, Defendant explained that he had "a lengthy juvenile history, beginning with allegations of a battery and assault when [he was] 14 years of age." Additionally, Defendant stated that he "had a long standing alcohol problem" and that he was cited for delinquency issues involving alcohol, including driving under the influence in March 2006, November 2006, September 2007, and February 2008. He also admitted

6

to having gone to juvenile drug court either drunk or high, and "despite having been in [d]rug [c]ourt for almost nine months, the program had not solved his problem." Further, Defendant acknowledged in his memorandum that he had been placed in drug court "to deal with the alcohol issue . . . just prior to the accident[.]" These facts, presented to the district court by Defendant, supported its designation under Section 33-2-34(L)(4)(o)(14). *See Solano*, 2009-NMCA-098, ¶¶ 1, 29 (affirming the district court's designation of the defendant's vehicular homicide conviction as a serious violent offense because, among other reasons, the defendant had a history with alcohol, he refused to address the problem, and he insisted on continuing to drive while drunk); *see also State v. Paiz*, 2006-NMCA-144, ¶ 33, 140 N.M. 815, 149 P.3d 579 ("A defendant cannot . . . complain on appeal that he was prejudiced by evidence which he introduced into the case." (internal quotation marks and citation omitted)).

Defendant asserts that because the State did not present, at the plea hearing, an exact statement of his blood-alcohol content at the time of the crash, the plea does not support the allegation at sentencing that Defendant's blood-alcohol content was .22% ninety minutes following the accident. At Defendant's plea hearing, the State presented a factual basis for Defendant's driving under the influence conviction, and although the State was unable to recall the precise level of Defendant's blood-alcohol content at the time of the crash, the State advised the court that Defendant's blood test

administered at the hospital resulted in "more than double the legal limit" at .18 or .20%. We are not persuaded by any implicit or explicit attempt by Defendant to refute, on appeal, the factual basis of his plea to which he did not object at the plea hearing and to which Defendant waived his right to appeal by voluntarily agreeing to the plea. *See State v. Chavarria*, 2009-NMSC-020, ¶ 9, 146 N.M. 251, 208 P.3d 896 ("[A] plea of guilty . . . , when voluntarily made after advice of counsel and with full understanding of the consequences, waives objections to prior defects in the proceedings and also operates as a waiver of statutory or constitutional rights, including the right to appeal." (internal quotation marks and citation omitted)).

Moreover, the laboratory report that indicated the .22% blood-alcohol content was submitted to the court as an exhibit attached to the State's motion in limine to admit the blood results and statements. Defendant did not file a response to that motion. Nor, at sentencing did he raise an objection to the State's claim that ninety minutes after the crash, Defendant's blood-alcohol content was .22%. By not objecting to the State's presentation of his blood test results either before or during sentencing, Defendant failed to preserve this issue for our review. *See* Rule 12-216(A) NMRA ("To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked[.]"). The district court did not err by relying on Defendant's blood-alcohol content to support its designation of

Defendant's crimes as serious violent offenses. *See State v. Worrick*, 2006-NMCA-035, ¶¶ 1, 3, 6, 10, 139 N.M. 247, 131 P.3d 97 (affirming the district court's designation of the defendant's vehicular homicide conviction as a serious violent offense based, in part, on the fact that the defendant had been driving with a blood-alcohol level of .25/.24); *State v. Wildgrube*, 2003-NMCA-108, ¶¶ 1, 37-38, 134 N.M. 262, 75 P.3d 862 (affirming the district court's designation of the defendant's vehicular homicide as a serious violent offense where the court noted, among other things, that the defendant had "consumed a significant amount of alcohol" and proceeded to drive in a reckless manner such that he drove into and killed a person).

Next, we review the sufficiency of the evidence before the district court that supported its finding that the nature of the harm, including the loss of life and the injuries to the other occupants in the vehicle with Decedent, caused this case to fall "squarely within the case law that holds that vehicular homicide can be a serious violent felony." In so doing, we note that although *Morales* established that the district court must find that the crimes were "committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm[,]" 2002-NMCA-016, ¶ 16, we have also determined that "*Morales* does not require the district court to enter findings containing specific terminology." *Worrick*, 2006-NMCA-035,

¶ 8. Although "something more than the mere elements in the definition of the crime need to be shown to designate the crime as a serious violent offense[,]" *Solano*, 2009-NMCA-098, ¶ 18 (alterations, internal quotation marks, and citation omitted), "the statutory factor of actual resulting harm may be considered in determining a defendant's intent." *Morales*, 2002-NMCA-016, ¶ 16 (internal quotation marks omitted).

At Defendant's plea hearing, the State, as a factual basis for the crimes of homicide by vehicle and great bodily injury, advised the district court that Defendant drove his pickup in an area of Taos County known as the Horse Shoe and that Defendant crossed over the center lane and slammed into the vehicle carrying Decedent and his family. Additionally, the record before the court contained the statement of probable cause of the arresting officer, Deputy Steve Miera of the Taos County Sheriff's Department. Deputy Miera stated that the point of contact between Defendant's vehicle and that of Decedent was "in the opposite lane of which [Defendant] was traveling[,]" which indicated that Defendant had "cross[ed] over the center yellow line into the oncoming traffic lane striking" the other vehicle. Deputy Miera also stated that Decedent was pronounced dead at the scene and that two of the children were air lifted from the scene to the University of New Mexico Trauma Center, while Decedent's wife and his youngest child were transported to an

emergency room by ambulance. Additionally, Deputy Miera stated that Defendant freely admitted to having had "a couple" of alcoholic beverages within a few hours of the crash.

On the record before us, we cannot say that the court abused its discretion in designating Defendant's crimes as serious violent offenses. The court properly considered the nature of the offenses and the resulting harm, including the loss of life and the severity of the injuries to the other passengers, in determining Defendant's intent. *See Morales*, 2002-NMCA-016, ¶ 13 (stating that for purposes of designating a crime as a serious violent offense, Section 33-2-34(L)(4) requires the district court to consider the nature of the offense and the resulting harm). The *Morales* intent or "recklessness in the face of knowledge" factor is further supported by Defendant's history of involvement in the drug court program, his history of alcohol-related offenses, and the fact that Defendant freely admitted to having consumed alcohol prior to the crash. *See Wildgrube*, 2003-NMCA-108, ¶¶ 37-38 (affirming the district court's designation of the defendant's vehicular homicide as a serious violent offense where the court observed that the defendant's "practice of continuing to drink and drive caused the victim's death" and that the court's designation was further supported by the defendant's "substantial" record of alcohol-related offenses, his having consumed a significant amount of alcohol, and proceeded to drive in a reckless

manner such that he drove into and killed a person); *see also Worrick*, 2006-NMCA-035, ¶¶ 3, 10 (affirming the district court's designation of the defendant's vehicular homicide conviction as a serious violent offense based, in part, on the defendant's admission that he was drunk, from which the district court could discern that the defendant was "a person with knowledge that his acts were reasonably likely to result in serious harm").

Further, Defendant's history reveals that he is someone with knowledge that his acts were reasonably likely to result in serious harm.  As to the "physically violent manner" of the offenses, the court's designation was supported by the fact that Defendant crossed into the opposite lane from that in which he was traveling and struck Decedent's vehicle head on.  *See Worrick*, 2006-NMCA-035, ¶ 5 (internal quotation marks and citation omitted); *cf. Solano*, 2009-NMCA-098, ¶ 18 (affirming the district court's designation of vehicular homicide as a serious violent offense where the court found that the defendant had "recklessly operated the truck at a high rate of speed that caused the victim, once struck, to be propelled . . . through the air and into the bed of [the d]efendant's truck" (omission in original) (internal quotation marks omitted)).  Having determined that the district court's designation of Defendant's crimes as serious violent offenses was supported by sufficient evidence in the record, we affirm its conclusion.  *See id.* ¶¶ 31-32.

12

Defendant argues that designation of his crimes as "serious violent offenses" exposed him to an "enhanced sentence." He asserts that the purported sentence enhancement was unconstitutional because the court, rather than a jury, found facts beyond those to which he pleaded guilty, as the court is permitted to do under Section 33-2-34(L)(4)(o). As such, pursuant to *State v. Frawley*, 2007-NMSC-057, 143 N.M. 7, 172 P.3d 144, and its supporting precedent, Defendant argues that this Court should hold that his constitutional right to a jury trial was violated by the district court's designation.

Because Defendant did not preserve this issue, he requests that we review for fundamental error and for a violation of his fundamental rights. Rule 12-216(B)(2) provides that this Court may consider questions involving fundamental error or fundamental rights of a party even when the issues have not been preserved. "The first step in reviewing for fundamental error is to determine whether an error occurred." *State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192. "The doctrine of fundamental error is one to be applied only under exceptional circumstances and solely to prevent a miscarriage of justice." *State v. Gonzales*, 112 N.M. 544, 548, 817 P.2d 1186, 1190 (1991) (internal quotation marks and citation omitted). And when there is no error, there can be no fundamental error. *See id.*

Defendant relies on our Supreme Court's decision in *Frawley*, 2007-NMSC-057, in which the Court held that "a jury and not a trial judge must find aggravating circumstances beyond a reasonable doubt[.]" *Id.* ¶ 36. In that case, our Supreme Court determined that NMSA 1978, Section 31-18-15.1(A) (1993) (amended 2009), was unconstitutional because, at the time of the *Frawley* defendant's sentencing, the statute allowed "for alteration of the basic sentence upon a finding by the judge of any mitigating or aggravating circumstances surrounding the offense or concerning the offender." *Frawley*, 2007-NMSC-057, ¶¶ 1, 3 (internal quotation marks and citation omitted). Its determination was based on the fact that Section 31-18-15.1(A) allowed the district court to find additional facts (i.e., aggravating circumstances) before sentencing the defendant to a sentence longer than the basic sentence mandated by the statute. *Id.* ¶¶ 3-5, 8.

In *Frawley*, the defendant was convicted of two third degree felonies and one misdemeanor. *Id.* ¶ 2. The basic sentence for a third degree felony was three years of imprisonment, and the basic sentence for a misdemeanor was less than one year of imprisonment. *Id.* Thus, in *Frawley*, the defendant could, pursuant to basic sentencing, be imprisoned for seven years, minus one day. The district court imposed the maximum basic sentence and then, pursuant to its finding of four aggravating circumstances, the court added one year to each of the defendant's felony convictions.

14

*Id.* ¶ 3.  The resulting sentence was a term of imprisonment for nine years less one day.  *Id.*  Because the defendant's aggravated sentence was increased above what was authorized by the jury's guilty verdict, the sentence was unconstitutional.  *Id.* ¶ 23.  Thus, in *Frawley*, the Court announced a new rule "requiring that a jury and not a trial judge must find aggravating circumstances beyond a reasonable doubt[.]"  *Id.* ¶ 36.  The announcement, in *Frawley*, 2007-NMSC-057, ¶ 36, of the new rule was contrary to the line of cases decided under, and thereby overruling, *State v. Wilson*, 2001-NMCA-032, 130 N.M. 319, 24 P.3d 351.  This Court's decision in *Morales*, 2002-NMCA-016, ¶ 4, having been based, in part, upon the former rule pertaining to aggravated sentences, was therefore among the cases affected by the announcement of the new rule.

In *Morales*, this Court rejected the *Morales* defendant's argument that an aggravated circumstances finding required a jury determination.  *Id.*  Specifically, this Court disagreed with the defendant's argument because "[t]he aggravation issue has been decided against him in [*Wilson*.]"  *Id.*  We see no basis upon which to conclude, as Defendant suggests, that *Frawley*'s abrogation of *Morales* extended to any part of that decision beyond its discussion of aggravating circumstances.  Accordingly, we reject Defendant's assertion that, in light of *Frawley*, this Court's conclusion in

*Morales* that Section 33-2-34(L)(4)(o) does not implicate the right to a jury was based on a flawed analysis.

Further, we are not persuaded by Defendant's contention that *Frawley* mandates a conclusion that his sentence was unconstitutional or that Section 33-2-34(L)(4)(o) is facially unconstitutional. Defendant fails to recognize that post-*Frawley*, in *Solano*, this Court rejected the premise upon which Defendant's argument is based. In *Solano*, 2009-NMCA-098, ¶ 13, the defendant argued that the district court had improperly considered his history of alcohol-related convictions as demonstrating the *Morales* "intent" criterion. *Solano*, 2009-NMCA-098, ¶¶ 12-13. He argued that past convictions should not support a serious violent offense designation because he was already punished for those offenses and because convictions that were more than ten years old should not "form the basis for the imposition of *further punishment.*" *Id.* ¶ 13 (emphasis added) (internal quotation marks omitted). This Court rejected both of the defendant's arguments because Section 33-2-34 "does not change the maximum penalty for a defendant's crime or impose an additional penalty. Rather, the statute affects the amount of time by which a defendant through his own good conduct could decrease his sentence." *Id.* ¶ 14 (alteration, internal quotation marks, and citation omitted). This Court having already determined that designation under Section 33-2-34(L)(4)(o) does not constitute "further punishment," Defendant's argument that his

16

constitutional rights were violated because the imposition of an "enhanced sentence" under Section 33-2-34 deprived him of a jury determination, cannot stand. Defendant agreed to a "total exposure of [n]ine . . . years" and that is what he was sentenced to serve. Therefore, because there was no error, there was no fundamental error.

**CONCLUSION**

For all of the foregoing reasons, we affirm Defendant's sentence.

**IT IS SO ORDERED.**


_____
**JONATHAN B. SUTIN, Judge**


**WE CONCUR:**


_____
**CYNTHIA A. FRY, Judge**


_____
**RODERICK T. KENNEDY, Judge**