2003-NMCA-149

82 P.3d 84

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Adrian Joseph COOLEY, Defendant–Appellant.**

**No. 23253.**

Court of Appeals of New Mexico.

Oct. 22, 2003.

Certiorari Granted, No. 38,379, Dec. 9, 2003.

718

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, for Appellee.

John Bigelow, Chief Public Defender, Cordelia A. Friedman, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

WECHSLER, Chief Judge.

{1}   Defendant Adrian Cooley pleaded no contest to charges of criminal sexual pen-

etration in the third degree contrary to NMSA 1978, § 30–9–11(E) (1995, prior to 2001 amendment); false imprisonment contrary to NMSA 1978, § 30–4–3 (1963); and three counts of battery contrary to NMSA 1978, § 30–3–4 (1963). The charges arose from a sexual assault upon a woman who was 59 years old, some 24 years older than Defendant. Defendant argues on appeal that the district court erred when it determined that the criminal sexual penetration was a serious violent offense under the provisions of NMSA 1978, § 33–2–34(L)(4)(n) (1999), because he did not receive proper notice and because the district court did not make proper findings. We affirm.

*Plea Hearing*

{2} Defendant pleaded no contest to the charges at a hearing on February 18, 2002. The prosecutor presented the facts underlying the charges, and Defendant agreed that there was a factual basis for each of the charges. In the plea, there had been no agreement between the State and Defendant as to the length of the sentence. During the hearing, the district court ensured that the plea was voluntary and that Defendant understood the rights he was waiving by pleading. The district court also asked Defendant if he understood that he was facing a possible sentence of zero to six years. Defendant responded to the district court's questions in the affirmative. At the conclusion of the hearing, the district court ordered a presentence report to be prepared for use at sentencing.

*Sentencing Hearing*

{3} In May 2002, at the sentencing hearing, the prosecutor stated that the victim would not attend the hearing because the attack had devastated her life, and she felt that she did not have the emotional well-being to stand before the court and speak. The prosecutor then described the nature of the sexual assault and the effect it had on the victim. The victim was acquainted with Defendant. On June 24, 2001, the day of the attack, they had been drinking with the same group at a bar. Later, the victim left the bar to call her daughter from a pay phone for a

ride home. Defendant followed her and asked her to come home with him. When she refused, Defendant struck her with such tremendous force that the next thing she remembered was being in a van, with her clothing around her ankles.

{4} Defendant anally raped the victim and hit her several times. He also grabbed her head and slammed it into the floor of the van during the course of the rape. At some point, the victim was able to get away and call the police from the pay phone. When the police arrived, they found the victim partially clothed, crying, and upset. Her purse and clothing were found in Defendant's van.

{5} A physical examination of the victim by a sexual assault nurse examiner (SANE) revealed four injuries to the victim's vaginal and rectal area. The victim had also suffered facial injuries from being beaten, including a severe blow to one of her eyes. The prosecutor showed the district court a photograph of the victim's facial injuries taken at the time of treatment by the SANE unit. At the time of the hearing, the victim was still having problems with her vision resulting from the facial blow and had not been able to work. Based on the brutality of the act, the prosecutor asked the court to follow the sentencing recommendation of the presentence report.

{6} The district court noted that a factual basis existed for Defendant's plea to the charges. The district court sentenced Defendant to a term of six years, with eighteen months suspended. It also ordered Defendant to participate in anger management and substance abuse counseling. Additionally, the district court imposed the following conditions of release: a two-year supervised parole period, restitution to the victim for her counseling expenses, and registration as a sex offender. *See* NMSA 1978, § 29–11A–4(B) (2000).

{7} The district court attributed three years of the six-year sentence to the crime of criminal sexual penetration in the third degree. NMSA 1978, § 31–18–15(A)(5) (1999). The prosecutor asked the district court to classify the sexual assault as a serious violent offense under Section 33–2–34(L)(4)(n) of the Earned Meritorious Deductions Act

(EMDA). The EMDA expressly states that third degree criminal sexual penetration may be deemed a serious violent offense if the court so determines, based upon "the nature of the offense and the resulting harm." Section 33–2–34(L)(4)(n). Under the EMDA, prisoners convicted of serious violent offenses may earn up to four days per month of credit for participation in various programs, while prisoners convicted of nonviolent offenses may earn up to thirty days per month. Section 33–2–34(A)(1), (2).

{8} Defendant objected and claimed that he had not received notice of the EMDA provisions. He argued that the EMDA is similar to the enhancement of a sentence based upon a finding of aggravating circumstances which requires notice of an intent to seek enhancement. The district court determined that notice of the EMDA provisions was not required because, unlike aggravation and enhancement, it does not affect the length of the sentence. The statute itself, the district court concluded, was sufficient notice to a defendant that the defendant could be subject to the EMDA. The district court then concluded that Defendant had committed criminal sexual penetration in an extremely violent manner and that serious harm had been done to the victim. The district court observed that the presentence report stated that the victim continued to suffer serious emotional harm from the sexual assault.

*Notice Under the EMDA*

■ {9} Defendant argues on appeal that his constitutional right to due process was violated because the State did not give notice of its intent to seek a serious violent offense classification under the EMDA. He contends that the lack of notice left him unprepared to respond to the question of whether his sexual assault upon the victim constituted a serious violent offense. As a result, Defendant asserts, he was unable to provide the district court with information it would have needed in determining whether the criminal sexual penetration was a serious violent offense.

■ {10} As a preliminary matter, we address Defendant's contention that the State was seeking "a greater period of incarceration than the statutory maximum" by "[enhancing] Defendant's real time [sentence]." This Court has previously rejected this contention in *State v. Wildgrube*, 2003–NMCA–108, ¶ 40, 134 N.M. 262, 75 P.3d 862, and in *State v. Morales*, 2002–NMCA–016, ¶ 6, 131 N.M. 530, 39 P.3d 747. As we concluded in those cases, the EMDA affects only the calculation of "good time" and does not change the maximum penalty for a defendant's crime. In this case, the district court's determination that the criminal sexual penetration committed by Defendant was a serious violent offense did not change the prescribed maximum penalty for a third degree felony. Defendant's sentence was still three years after the district court's determination that Defendant's crime was a serious violent offense under the EMDA.

{11} Defendant argued to the district court that his rights were violated because he did not receive notice that the EMDA would be considered at sentencing. The district court rejected Defendant's arguments, distinguishing the EMDA from the aggravation of a sentence because the EMDA did not affect the maximum length of the sentence, and concluded that the statute itself provided notice to Defendant that he could be subject to that provision of the statute. We agree.

{12} As Defendant himself recognizes, the three statutes governing his sentencing are interrelated. The statute dealing with criminal sexual penetration in the third degree, Section 30–9–11, specifies that the offense is a third degree felony. Section 30–9–11(E). The sentencing statute, Section 31–18–15(A)(5), states that the basic sentence for a third degree felony offense is three years imprisonment and also requires the district court, when imposing a sentence for a felony offense, to "indicate whether or not the offense is a serious violent offense" under the EMDA. *See* § 31–18–15(F). The EMDA, in Section 33–2–34(L)(4)(n), specifically identifies criminal sexual penetration as a crime that the court may determine to be a serious violent offense depending upon "the nature of the offense and the resulting harm." Therefore, the links between the statutes provided notice as a matter of law that the district

court must consider the EMDA at sentencing. Furthermore, we note that Defendant's sentencing hearing was in May 2002. The EMDA has been in effect since July 1, 1999. *See* § 33–2–34. As we concluded in *Wildgrube*, "[e]nactment of the statute would have put [a defendant] on notice." *Wildgrube*, 2003–NMCA–108, ¶ 42, 134 N.M. 262, 75 P.3d 862.

{13} In support of his argument regarding notice, Defendant also relies upon *Caristo v. Sullivan*, 112 N.M. 623, 818 P.2d 401 (1991), which involved the enhancement of a sentence. This Court discussed *Caristo* in terms of the question of notice under the EMDA in *Wildgrube*, 2003–NMCA–108, ¶ 41, 134 N.M. 262, 75 P.3d 862. In *Caristo*, our Supreme Court stated that a defendant was entitled to "notice of the specific aggravating factors on which the state intends to rely so that the defendant will have an opportunity to prepare a response." *Caristo*, 112 N.M. at 631, 818 P.2d at 409. However, the Court in *Caristo* recognized that a defendant would have actual notice if the aggravating factor "was an element of the offense or a fact upon which such an element was established." *Id.* The Court in *Caristo* also stated that a presentence report would typically provide adequate notice of any circumstances that were not established at trial. *Id.* at 632 n. 7, 818 P.2d at 410 n. 7.

{14} In *Wildgrube*, we concluded that the defendant had sufficient notice of the factors used by the district court in determining that the vehicular homicide in that case was a serious violent offense. *Wildgrube*, 2003–NMCA–108, ¶ 41, 134 N.M. 262, 75 P.3d 862. In making the determination in that case, the district court relied upon the evidence presented at trial and at the sentencing hearing, as well as a presentence report, all of which were known to the defendant. *Id.* This Court concluded that under the standard articulated in *Caristo*, the defendant had actual notice of the EMDA factors considered at his sentencing hearing. *Wildgrube*, 2003–NMCA–108, ¶ 41, 134 N.M. 262, 75 P.3d 862.

{15} Similarly, in this case, Defendant had knowledge of the factual information about the sexual attack presented by the prosecutor at the plea hearing, as well as the information contained in the presentence report. Defendant did not dispute the prosecutor's recitation of the nature of the attack and acknowledged that it was consistent with the account the victim had given to the police at the time of the attack. At the plea hearing, Defendant also acknowledged that there was a factual basis to the charges. At the sentencing hearing, Defendant stated that he regretted that night, which he blamed on alcohol, and "deeply regret[ted] the consequences." Defendant claimed in the presentence report that he and the victim had been in a sexual relationship before the attack, a claim which the victim emphatically denied. The district court responded that even if that claim were true, the attack on the victim was clearly not consensual.

{16} The district court, in making the determination that the crime had been a serious violent offense, relied upon the description at the sentencing hearing of the nature of Defendant's sexual attack of the victim and the effect the rape had upon the victim. The district court also referred to the presentence report's description of the extent of the victim's physical and emotional injuries. None of this information should have been a surprise to Defendant. *See State v. Badoni*, 2003–NMCA–009, ¶¶ 20–21, 133 N.M. 257, 62 P.3d 348 (concluding that the defendant's claim of insufficient notice of a firearm enhancement was without merit given the existence of the statute and that there had been testimony at trial about the gun, the victims' gunshot wounds, and an eyewitness account of the shooting).

{17} Moreover, although Defendant claims that he was unprepared at the sentencing hearing to provide the district court with information about the offense, he did not challenge the factual basis of the prosecutor's account of the attack at that hearing and has not done so on appeal. Defendant does not explain how he would have prepared differently for the hearing or what information the district court was lacking in making its decision. *See State v. Vallejos*, 2000–NMCA–075, ¶ 35, 129 N.M. 424, 9 P.3d 668 (observing that, although the defendant claimed to have been prejudiced by the late disclosure of witnesses, he did not "adequate-

ly explain how his cross-examination of the witnesses could have been improved without the late disclosure"); *In re Ernesto M.,* 1996–NMCA–039, ¶ 10, 121 N.M. 562, 915 P.2d 318 ("An assertion of prejudice is not a showing of prejudice.").

*Finding of Serious Violent Offense*

{18} Defendant also contends, relying upon *Morales,* 2002–NMCA–016, ¶ 16, 131 N.M. 530, 39 P.3d 747, that the district court erred because it did not find that he either intended to seriously harm the victim or acted with knowledge that his acts were reasonably likely to result in serious harm. Given the facts established regarding the nature of the sexual attack upon the victim, Defendant, in making this claim, appears to have misapprehended our intention in *Morales.* Our express purpose was to provide guidance to district courts in judging when the offenses listed in Section 33–2–34(L)(4)(n) were serious violent offenses. *Morales,* 2002–NMCA–016, ¶ 16, 131 N.M. 530, 39 P.3d 747 (stating that a trial judge must have some way of measuring which conduct amounts to serious violent offenses and which does not). In so doing, this Court construed Section 33–2–34(L)(4)(n) of the EMDA to require a finding that a defendant had committed the crime "in a physically violent manner," acting either intentionally or recklessly, which resulted in serious harm to the victim. *Morales,* 2002–NMCA–016, ¶ 16, 131 N.M. 530, 39 P.3d 747. We disagree with Defendant, however, to the extent that he interprets this discussion to require specific language from the district court. It is sufficient for the district court to make findings consistent with the *Morales* standard.

{19} Nor did the district court solely consider the suffering of the victim, as Defendant argues. The district court found that "the nature of the criminal act in this case was extremely violent under the circumstances before the court." It described those circumstances as Defendant's having sexually assaulted the victim while she was unconscious, after he placed her in that vulnerable state in the first place. The district court's findings about the nature of the offense are supported by the record, and those findings conform with the requirement of the EMDA that the district court consider the nature of the offense and the resulting harm in adjudging a crime to be a serious violent offense under the EMDA. Section 33–2–34(L)(4)(n). The district court's findings, based on the facts before it, necessarily involved a determination that the criminal sexual penetration was committed in a "physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." *See Morales,* 2002–NMCA–016, ¶ 16, 131 N.M. 530, 39 P.3d 747. Therefore, the district court did not err in classifying the criminal sexual penetration as a serious violent offense.

*Unpreserved Argument*

{20} Finally, Defendant asserts in the conclusion of his brief in chief, without authority or argument, that his right to due process under Article II, Section 18 of the New Mexico Constitution was violated. Defendant did not raise this claim below. He did not argue to the district court and does not argue on appeal that our courts should depart from federal due process analysis or that Article II, Section 18 should be interpreted more broadly than the Fourteenth Amendment. *See State v. Gomez,* 1997–NMSC–006, ¶¶ 22–23, 122 N.M. 777, 932 P.2d 1 (describing preservation requirements for a state constitutional claim). We therefore do not consider this claim.

*Conclusion*

{21} For the reasons discussed above, the district court did not err in applying the EMDA to Defendant in finding that the criminal sexual penetration was a serious violent offense under Section 33–2–34(L)(4)(n). Accordingly, we affirm Defendant's sentence.

{22} IT IS SO ORDERED.

ROBINSON and VIGIL, JJ., concur.