**Certiorari Denied, July 19, 2011, No. 33,084**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-084**

**Filing Date: May 24, 2011**

**Docket No. 29,266**

**STATE OF NEW MEXICO,**

       **Plaintiff-Appellee,**

**v.**

**CHRISTOPHER LAVONE,**

       **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Stephen D. Pfeffer, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Acting Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**FRY, Judge.**

**{1}** While driving under the influence of alcohol, Defendant struck a pedestrian at night on a busy street, knocking her into oncoming lanes of traffic, and immediately left the scene. The victim died, and Defendant pleaded guilty to homicide by vehicle (driving while under the influence of liquor). At sentencing, the district court classified Defendant's offense as a serious violent offense under the Earned Meritorious Deductions Act (EMDA), NMSA

1978, § 33-2-34 (2006), which limits his ability to earn good time. The district court reasoned that by failing to stop and render aid, Defendant left the victim in danger of being hit by other vehicles at a time when he did not know her condition. Defendant appeals the district court's decision and raises other issues related to the fairness of his sentencing hearing. We hold that the court did not abuse its discretion in determining that the offense was a serious violent offense. We reject Defendant's other claims and affirm.

## BACKGROUND

**{2}** After dark, at about 8:30 p.m. on March 21, 2007, Defendant was driving northbound on St. Francis Drive in Santa Fe, New Mexico. There is no evidence that he was speeding, but his blood alcohol content was above the legal limit. He struck the victim, a pedestrian, as she attempted to cross St. Francis Drive at the intersection of Paseo de Peralta. It appears that the victim was knocked into the southbound lanes of St. Francis Drive and that, because of darkness, it would have been more difficult for the drivers of other vehicles to see her. Defendant did not stop to render aid and instead drove away from the scene. He stopped later in Tesuque, New Mexico, and called 911.

**{3}** At the sentencing hearing, Defendant claimed that he failed to stop at the time of the accident because the accident triggered his post-traumatic stress disorder (PTSD). The State argued that Defendant's crime should be designated as a serious violent offense under the EMDA because Defendant, without knowing the victim's condition, failed to stop and render aid to her. The district court agreed, and this appeal followed.

## DISCUSSION

### The EMDA

**{4}** Under the EMDA, some offenses are per se serious violent offenses, while other listed offenses may, in the court's discretion, be found to be so. The offense in the present case, third degree homicide by vehicle, is in the discretionary category. *See* § 33-2-34(L)(4)(o). To designate an offense as a serious violent one, the district court must determine that the crime was "committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." *State v. Solano*, 2009-NMCA-098, ¶ 10, 146 N.M. 831, 215 P.3d 769 (internal quotation marks and citation omitted), *cert. denied*, 2009-NMCERT-007, 147 N.M. 363, 223 P.3d 360.

**{5}** We review the court's ruling for an abuse of discretion. *See Solano*, 2009-NMCA-098, ¶ 7. A court abuses its discretion if it acts contrary to law or when its decision is not supported by substantial evidence. In conducting our review for abuse of discretion, we consider whether the court's serious violent offender designation is supported by sufficient evidence, free of legal error, and reflects a reasonable choice among alternatives. *Id.*

**{6}** This Court has decided a number of cases considering whether a particular vehicular homicide conviction was properly determined to be a serious violent offense. All of these cases involved a defendant who had a history of drinking or facts demonstrating recklessness. *See id.* ¶¶ 13-18 (involving a defendant who had a prior criminal history involving alcohol-related offenses and who drove at a high rate of speed and caused a particularly violent collision with a bicyclist); *State v. Worrick*, 2006-NMCA-035, ¶ 9, 139 N.M. 247, 131 P.3d 97 (involving a defendant who had an extremely high blood alcohol content and a history of intoxication); *State v. Montoya*, 2005-NMCA-078, ¶¶ 9-10, 137 N.M. 713, 114 P.3d 393 (concerning a defendant who had a long prior history of a drinking problem); *State v. Wildgrube*, 2003-NMCA-108, ¶ 37, 134 N.M. 262, 75 P.3d 862 (concerning a defendant who had four previous arrests for alcohol-related offenses and two convictions for driving while intoxicated).

**{7}** By contrast, Defendant in the present case has no record and no past history of drinking and driving. There is no evidence of speeding or reckless driving before the accident. The district court found Defendant's offense to be a serious violent one based solely on his failure to stop and help, reasoning that he left the victim in danger from oncoming traffic at a time when Defendant did not know her condition. We must decide whether this is sufficient.

**{8}** A determination that an offense is a serious violent offense may not be based on the physically violent death of the victim and must be based on something more than the mere elements of the crime. *See Solano*, 2009-NMCA-098, ¶ 18. The determination is highly dependent on the "particular factual context" of the case. *State v. Rudolfo*, 2008-NMSC-036, ¶ 37, 144 N.M. 305, 187 P.3d 170; *see also State v. Morales*, 2002-NMCA-016, ¶ 16, 131 N.M. 530, 39 P.3d 747 (recognizing that there are "differences in the ways of committing the offenses listed in Section 33-2-34(L)(4)(n)").

**{9}** Sentencing statutes indicate the Legislature's intent that district courts have broad sentencing discretion. *See State v. Clah*, 1997-NMCA-091, ¶ 19, 124 N.M. 6, 946 P.2d 210 (stating that "the sentencing statutes evidence a legislative intent that the trial court have a wide variety of options by which to sentence" (internal quotation marks and citation omitted)). In the sentencing context, generally, a district court must consider many factors when it makes a sentencing determination, and the court is given broad discretion to fashion a sentence "appropriate to the offense and the offender." *State v. Sinyard*, 100 N.M. 694, 697, 675 P.2d 426, 429 (Ct. App. 1983). These general principles, combined with *Rudolfo*'s direction to consider the "particular factual context," indicate that a district court is given broad discretion under the EMDA to consider all relevant factors.

**{10}** Considering the "particular factual context," as required by *Rudolfo*, we conclude that the district court appropriately acted within its discretion in determining that the offense was a serious violent one. The court's determination was not based solely on the physically violent death of the victim or on the elements of the crime. Rather, it was based on Defendant's indifference to the victim's condition and to her vulnerability to oncoming

3

traffic. Although Defendant's recklessness occurred immediately after the accident rather than before it, that fact does not change our conclusion. Defendant's conduct in leaving the scene of the accident still demonstrated reckless disregard for the victim, who had been thrown into traffic lanes, and potentially increased the risk of harm to her. Accordingly, the district court could reasonably conclude that Defendant's conduct constituted "recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." *Solano*, 2009-NMCA-098, ¶ 10 (internal quotation marks and citation omitted).

**{11}** Defendant relies on the differences between the present case and the other vehicular homicide cases involving the EMDA and argues that this case does not meet the relevant standard, either as a matter of fact or of law. He argues that his conduct was not "egregious enough." He also argues that his conduct did not demonstrate the requisite physical violence or intent. He describes his failure to stop as "indifference," arguing that it does not rise to the level of recklessness. While his case is different from the other vehicular homicide cases we have considered, we cannot say that the district court's decision was untenable or contrary to law.

**{12}** Defendant relies on case law holding that offenses not listed in the EMDA cannot be found to be serious violent offenses. *See State v. Loretto*, 2006-NMCA-142, ¶ 9, 140 N.M. 705, 147 P.3d 1138 (reversing the district court's determination that the crime of attempted first degree criminal sexual penetration was a serious violent offense because the crime is not an offense enumerated in Section 33-2-34(L)(4)(n) and therefore cannot be found to be a serious violent offense); *State v. Bennett*, 2003-NMCA-147, ¶¶ 12-13, 134 N.M.705, 82 P.3d 72 (holding that third-degree aggravated battery on a household member could not be a serious violent offense because it is not enumerated in the statute). He argues that the offense of failure to render aid is not listed in the EMDA and, therefore, his failure to render aid cannot be used to support the district court's decision.

**{13}** We are not persuaded. In the cases relied on by Defendant, the offenses found to be serious violent offenses were not listed in the EMDA. In the present case, however, vehicular homicide is a listed offense. That key fact distinguishes this case from *Loretto* and *Bennett*. Defendant calls this distinction one "without [a] difference," arguing that the absence of failure to render aid in the EMDA means that conduct like Defendant's may never be used to justify a finding like the one in the present case.

**{14}** We disagree. Our task is to determine legislative intent and to construe legislation in a reasonable fashion. *See State v. Cleve*, 1999-NMSC-017, ¶ 8, 127 N.M. 240, 980 P.2d 23. We believe Defendant overstates what was intended by the Legislature. The Legislature understandably did not include failure to render aid in the EMDA because it is not normally considered a violent offense, at least in the abstract. We cannot, however, stretch this legislative choice beyond what must have been intended. There is a difference between the offense of failure to render aid, viewed in the abstract, and leaving a victim unprotected in a dark, busy roadway after having struck the victim with a car. In our view, Defendant reads more into the EMDA than what the Legislature intended. Consequently, we are not

4

persuaded that the district court's ruling was prohibited by either the EMDA or the cases on which Defendant relies.

**{15}** Finally, Defendant relies on his PTSD to excuse his conduct, but this is a factual argument, and the weight to be given to that evidence was for the district court to decide. *See State v. Hughey*, 2007-NMSC-036, ¶ 16, 142 N.M. 83, 163 P.3d 470 (stating that the fact finder determines matters of credibility and the weight of evidence). The district court was not required to find it persuasive.

**Other Arguments Regarding Fairness**

**{16}** Defendant argues that he did not receive adequate notice that the State would seek a determination that his offense was a serious violent offense and that he was denied the right to present a defense to the State's claim. He also claims that the State affirmatively misled him because the State "changed its position" or "*apparently* changed its position" at the sentencing hearing. (Emphasis added.) He argues that, contrary to the State's "prior representations," the State improperly relied on "conduct it had previously agreed not to pursue."

**{17}** Our law does not require formal notice that the State will seek a determination that an offense is a serious violent one. A defendant is deemed to have notice from the EMDA itself. *See State v. Cooley*, 2003-NMCA-149, ¶ 12, 134 N.M. 717, 82 P.3d 84 (holding that the statute gives notice). Additionally, when the facts on which the State relies should not have been a surprise to a defendant, he cannot complain about a lack of notice. *Id.* ¶ 16. Finally, a defendant complaining of a lack of notice must show prejudice. *Id.* ¶ 17.

**{18}** Defendant's assertion that he was misled is based solely on the fact that the count alleging failure to render aid was dropped as part of the plea bargain. Other than making this general assertion, Defendant's brief does not cite any evidence in the record, such as statements by the prosecution, supporting his contention that the State affirmatively misled him. The fact that the State dropped the count alleging failure to render aid as part of the plea bargain is not enough to establish that the State misled Defendant.

**{19}** Moreover, at sentencing, a district court may consider an almost limitless variety of information. *See United States v. Watts*, 519 U.S. 148, 154 (1997), per curiam (holding that the court could consider crimes of which the defendant has been acquitted); 6 Wayne R. LaFave, et al., *Criminal Procedure* § 26.4(b) (3d ed. 2010) (explaining that, at sentencing, even acts that are beyond the charged conduct, including unrelated criminal conduct, are relevant and may be considered). Consequently, a defendant should be prepared to deal with all of the facts surrounding the criminal incident, which would include facts that might have supported convictions for other, related crimes. Because the sentencing court may consider a broad range of information, we are not persuaded that there were any constitutional or legal limitations on the district court's ability to consider Defendant's failure to stop. And because the sentencing court must consider the "particular factual context," *Rudolfo*, 2008-

NMSC-036, ¶ 37, the fact that the State had agreed to drop a charge as part of a plea bargain did not foreclose the district court from considering Defendant's entire course of conduct during the criminal incident. On these facts, we hold that the State did not unfairly mislead Defendant.

**{20}** Defendant also relies on statements from his counsel's motion for a new trial. The motion claimed that Defendant did not receive any notice that the State would seek a determination that the offense was a serious violent one, and it contained a vague reference to the plea agreement. However, based on the law we have discussed, Defendant could not reasonably assume that the district court was precluded from considering his failure to render aid.

**{21}** The motion further asserted that, had trial counsel known the State would rely on the failure to stop and render aid, he would have played a tape of the 911 call made by Defendant. Trial counsel's claim that he would have made a different strategy decision is not compelling. According to Defendant's brief in chief, the tape would have supported his argument that his PTSD excused his failure to remain at the scene because it demonstrated that Defendant was "agitated and disoriented." The parties had already squarely presented that issue to the district court through expert testimony. As we have already noted, the resolution of this factual issue was a matter for the district court to decide. Furthermore, because nothing indicates the tape would have made any difference, we conclude that Defendant has not shown any prejudice. *See Cooley*, 2003-NMCA-149, ¶ 17 (requiring a showing of prejudice).

**{22}** Finally, we reject Defendant's claim that he was unfairly surprised and could not present a defense. Given the law granting a sentencing court broad power to consider a wide range of information, Defendant should not have been surprised. In addition, the record indicates that Defendant was well prepared to deal with the potential negative impact presented by his failure to remain at the scene. At sentencing, he presented expert testimony to explain that his PTSD was the reason he was unable to remain at the scene. He knew his conduct was an issue, despite the fact that he no longer faced a conviction for failure to render aid. Even if Defendant had been surprised, he was able to respond when he filed his motion for a new trial asking the district court to reconsider its sentencing decision.

**{23}** For all of these reasons, we conclude that Defendant had adequate notice, knew that his failure to stop was relevant, and has not shown prejudice. *See id.* ¶¶ 16-17.

**Double Jeopardy**

**{24}** Pursuant to *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), Defendant argues that the court's ruling subjected him to double jeopardy because the count for failing to stop and render aid had been dismissed as part of the plea bargain. We reject this argument. The EMDA does not change the penalty, impose an additional penalty, or lead to impermissible

further punishment.  Therefore, there is no double jeopardy violation.  *See Solano*, 2009-NMCA-098, ¶ 14.

**CONCLUSION**

**{25}**   We affirm Defendant's conviction and sentence.

**{26}   IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for *State v. Lavone*, Docket No. 29,266**

| | |
|---|---|
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DJ | Double Jeopardy |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-DG | Driving While Intoxicated |
| CL-VH | Vehicular Homicide |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-DJ | Double Jeopardy |
| CA-GT | Good Time |
| CA-PP | Plea and Plea Bargaining |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |