This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36923**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**JUAN D. CORDOVA,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Jennifer L. Attrep, District Judge**

Hector H. Balderas, Attorney General
Eran Sharon, Assistant Attorney General
Santa Fe, NM

for Appellee

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**M. ZAMORA, Judge.**

**{1}**    Following a jury trial, Defendant Juan Cordova was found guilty of homicide by vehicle; two counts of great bodily harm by vehicle; and leaving the scene of an accident. At Defendant's sentencing hearing the district court found that Defendant's convictions for homicide by vehicle and great bodily harm by vehicle were serious violent offenses pursuant to the Earned Meritorious Deductions Act, (EMDA), NMSA 1978, § 33-2-34 (2015). Defendant was sentenced to an aggregate sentence of fifteen years. Defendant raises four issues on appeal: (1) his sentence pursuant to the EMDA

was unconstitutional; (2) the district court impermissibly classified his offenses as serious violent offenses; (3) the district court abused its discretion when it denied the jury an opportunity to listen to the audio recording of a witness's trial testimony; and (4) the district court erred when it modified the order in which the final jury instruction was read. Finding no error, we affirm.

**BACKGROUND**

**{2}** A group of motorcyclists was traveling from Red River, New Mexico to Albuquerque, New Mexico. Defendant, driving a pickup truck in the opposite direction, crossed the center lane and struck the motorcyclists, injuring several of them and killing one. Following the collision, Defendant drove a short distance before he and his two passengers abandoned the vehicle.

**I.     The District Court Did Not Err in Applying the EMDA to Defendant's Sentence**

**{3}** Defendant asserts the district court erred when it applied the EMDA to his sentence. He raises two related EMDA issues: (1) his sentence pursuant to the EMDA is unconstitutional; and (2) the district court impermissibly classified his offenses as serious violent offenses. We address each in turn.

**A.     The Constitutionality of the EMDA**

**{4}** Defendant argues that the EMDA is unconstitutional as applied because it does not require that the jury find beyond a reasonable doubt that Defendant's acts constituted serious violent offenses. Defendant asserts that his sentence was effectively enhanced when the district court, and not the jury, found he was a serious violent offender, and therefore, his sentence must be reversed and the case remanded for resentencing.

**{5}** Defendant raises the challenge to the constitutionality of the EMDA for the first time on appeal. Although Defendant did not preserve this issue, he requests that we review for fundamental error. "The doctrine of fundamental error is one to be applied only under exceptional circumstances and solely to prevent a miscarriage of justice." *State v. Gonzales*, 1991-NMSC-075, ¶ 8, 112 N.M. 544, 817 P.2d 1186 (internal quotation marks and citation omitted). "The first step in reviewing for fundamental error is to determine whether an error occurred." *State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192. "If [the first] question is answered affirmatively, we then consider whether the error was fundamental." *Id.*

**{6}** Under the EMDA, a prisoner convicted of a serious violent offense may earn up to four days of meritorious deductions per month of time served for participation in various programs, while prisoners convicted of non-violent offenses may earn up to thirty days of meritorious deductions per month of time served. Section 33-2-34(A)(1), (2). Defendant asserts that the "clear intent and effect of the EMDA is to increase

(enhance) a convicted person's sentence for a crime for which the person has been adjudicated guilty by a jury, based on information determined by the district court judge, not the jury."

**{7}** As this court has previously held, "the EMDA does not change the maximum penalty for a defendant's crime or impose an additional penalty. Rather, the statute affects the amount of time by which defendant through his own 'good conduct' could decrease his sentence." *State v. Andazola*, 2003-NMCA-146, ¶ 21, 134 N.M. 710, 82 P.3d 77 (internal quotation marks and citation omitted). This Court has reviewed a number of claims that the EMDA adds time to a defendant's sentence, and has consistently rejected such claims. *See State v. Montoya*, 2005-NMCA-078, ¶¶ 14-15 137 N.M. 713, 114 P.3d 393 (stating "the effect of the EMDA is not to change anything with regard to any maximum sentence[,]" and clarifying, "[w]hat changed by virtue of the EMDA was the amount of time that [the d]efendant could earn as a credit on his sentence by participating in programs while incarcerated"); *State v. Wildgrube*, 2003-NMCA-108, ¶ 40, 134 N.M. 262, 75 P.3d 862 (explaining that the defendant's sentence was for the same amount of time, both before and after, the court's determination that vehicular homicide was a serious violent offense); *State v. Morales*, 2002-NMCA-016, ¶ 6, 131 N.M. 530, 39 P.3d 747 (affirming that the EMDA simply "does not add years to [a d]efendant's sentence" (internal quotation marks and citation omitted)), *abrogated on other grounds by State v. Frawley*, 2007-NMSC-057, ¶ 36, 143 N.M. 7, 172 P.3d 144.

**{8}** Defendant relies in part on our Supreme Court's decision in *Frawley*, to assert that New Mexico statutes are unconstitutional where the district court is called upon to find facts beyond those found by a jury to increase the defendant's sentence. *See Frawley*, 2007-NMSC-057, ¶ 23 ("[W]e recognize that the Sixth Amendment is violated any time a defendant is sentenced above what is authorized solely by the jury's verdict alone." (emphasis omitted)). *Frawley*, however, addressed a statute unlike the EMDA that specifically allowed "for alteration of the basic sentence upon a finding by the judge of any mitigating or aggravating circumstances surrounding the offense or concerning the offender." 2007-NMSC-057, ¶¶ 1, 3 (internal quotation marks and citation omitted).

**{9}** In contrast to the statute at issue in *Frawley*, "the EDMA does not change the maximum penalty for a defendant's crime or impose an additional penalty." *Andazola*, 2003-NMCA-146, ¶ 21. Instead, our case law and the plain language of the EMDA confirm that the EDMA specifies a scheme as to how a defendant may *decrease* his maximum sentence by good conduct. *See* § 33-2-34(A)(1) (stating that a defendant confined in a correctional facility may earn meritorious *deductions* from his sentence based upon the defendant's participation in approved programs); *see also State v. Almanzar*, 2014-NMSC-001, ¶ 14, 316 P.3d 183 (acknowledging that courts give "words their ordinary meaning, unless the Legislature indicates a different one was intended" (internal quotation marks and citation omitted)); *State v. Jonathan M.*, 1990-NMSC-046, ¶ 4, 109 N.M. 789, 791 P.2d 64 ("When a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation."), *superseded by statute as stated in State v. DeAngelo*, 2015-NMSC-033, 360 P.3d 1151.

**{10}** Here, the district court sentenced Defendant to a term of fifteen years and the EMDA requirements did not affect the maximum length of Defendant's sentence. *See Andazlola*, 2003-NMCA-146, ¶ 22 (explaining that the "[d]efendant was sentenced to forty years and the EMDA requirements did not affect the maximum length of [the d]efendant's sentence"); *Morales*, 2002-NMCA-016, ¶ 6 (pointing out that the "[d]efendant's sentence before application of the EMDA was [twelve] years, and it was still [twelve] years after application of EMDA"). The district court's finding simply has an impact upon the amount of time by which Defendant, through his own "good time," can decrease his sentence. *See Wildgrube*, 2003-NMCA-108, ¶ 40 ("The EMDA provision set forth . . . did not alter the prescribed penalty imposed for the offense of vehicular homicide, but rather affected the way "good time" was calculated."); *see also State v. Lavone*, 2011-NMCA-084, ¶ 24, 150 N.M. 473, 261 P.3d 1105 ("The EMDA does not change the penalty, impose an additional penalty, or lead to impermissible further punishment."). Accordingly, we reject Defendant's arguments that Section 33-2-34(A)(1) unconstitutionally enhances his sentence. Because we determine there was no error by the district court's application of the EMDA, we do not proceed to review for fundamental error. We now turn to whether the district court abused its discretion in determining that Defendant's offense of third degree homicide by vehicle and great bodily harm by vehicle were serious violent offenses.

## B. Discretionary Nature of the EMDA

**{11}** Defendant argues that the jury, not the district court, should "make findings that effectively increase[] [Defendant's] sentence[.]" As we noted in *State v. Solano*, 2009-NMCA-098, ¶ 7, 146 N.M. 831, 215 P.3d 769, "[o]ur Supreme Court has explained that the judiciary has no role in the administration of the EMDA apart from exercising discretion to determine whether the nature of the offense and the resulting harm in a particular factual context justify categorizing the offense as a serious violent offense." (internal quotation marks and citations omitted). "We review the district court's [discretionary] ruling for an abuse of discretion." *Lavone*, 2011-NMCA-084, ¶ 5. "A [district] court abuses its discretion if it acts contrary to law or when its decision is not supported by substantial evidence." *Id.* "[W]e consider whether the court's serious violent offender designation is supported by sufficient evidence, free of legal error, and reflects a reasonable choice among alternatives." *Id.*

**{12}** Before looking to whether the district court abused its discretion, we first note that under the EMDA, some offenses are per se serious violent offenses, while other listed offenses may, in the court's discretion, be found as such. *See id.* ¶ 4, (distinguishing between the offenses found in the "per se" and "discretionary" categories under Section 33-2-34(L)(4)(o)). Here, third degree homicide by vehicle, contrary to Section 66-8-101, falls within the discretionary category. Section 33-2-34(L)(4)(o)(14). The EMDA and case law both vest discretion with the district court, contrary to Defendant's argument. Specifically, the sentencing court is required to exercise its discretion to determine whether the nature of the offense and the resulting harm in a particular factual context justify categorizing the offense as a serious violent offense. *See State v. Rudolfo*, 2008-NMSC-036, ¶ 37, 144 N.M. 305, 187 P.3d 170. The district court may designate a crime

as a serious violent offense if it determines that the crime was "committed in a physically violent manner either with an intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm." *Morales*, 2002-NMCA-016, ¶ 16. The designation falls within the district court's discretion and the determination will be affirmed if it is supported by sufficient evidence in the record. *See Solano*, 2009-NMCA-098, ¶ 7.

## C.      The District Court's Application of the EMDA

**{13}**     Defendant argues that the district court erred by qualifying his offenses as serious by "impermissibly rest[ing] on the same elements as the crime of reckless driving and knowingly leaving the scene of an accident[.]" Defendant asserts that a determination that an offense is a serious violent one may not be based on the physically violent death of the victim and must be based on something more than the mere elements of the crime. Defendant asserts the court only qualified his offenses as serious violent ones by relying on the recklessness of crossing the center lane and driving into oncoming traffic, which is the same recklessness that is an element of his offenses.

**{14}**     Determining that an offense is a serious violent offense must be based on more than the mere elements of the crime and not solely based on the physically violent death of the victim. *Lavone*, 2011-NMCA-084, ¶ 8. "The determination is highly dependent on the particular factual context of the case." *Id.* (internal quotation marks and citation omitted).

**{15}**     Here, the record shows the district court based its determination on the particular factual context that occurred on the evening of the accident, and not solely on the elements of the crime. During the sentencing hearing, the district court articulated findings supporting the conclusion that the crime was committed in a physically violent manner. *See Morales*, 2002-NMCA-016, ¶ 16 (stating that the district court may designate a crime as a serious violent offense if it determines that the crime was "committed in a physically violent manner"). The district court pointed to the evidence presented during trial indicating the manner in which the accident occurred—Defendant drove directly into a group of motorcyclists in a physically violent manner such that the extent of one of the victim's injuries were too gruesome to repeat. Further, the district court also articulated findings to support the fact that Defendant was a person with knowledge that his actions were reasonably likely to result in further serious harm. *See id.* (stating that an offense may be designated as serious if it was "committed . . . with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm"). The district court pointed to Defendant's indifference to the motorcyclists after the collision by failing to stop his truck immediately after the accident, by leaving them gravely injured in the roadway where they were at risk for further injuries.

**{16}**     We disagree with Defendant that the district court merely relied on an element of the offenses he was convicted of to determine they were serious violent offenses. In *Lavone*, the defendant, driving under the influence of alcohol, struck a pedestrian at

night, knocking her into oncoming lanes of traffic, and immediately left the scene. 2011-NMCA-084, ¶ 1. The victim died from her injuries and the defendant pleaded guilty to homicide by vehicle (driving while under the influence of alcohol). *Id.* The district court classified the defendant's offense as a serious violent offense under the EMDA. *Id.* The district court there reasoned that the defendant's conduct in leaving the scene of the accident demonstrated reckless disregard for the victim, who had been thrown into traffic lanes, potentially increasing the risk of harm to her. *Id.* ¶ 10. We affirmed the district court's decision, relying on that "particular factual context," to determine that the indifference to the victim's condition was enough to demonstrate recklessness. *Id.*

**{17}** As in *Lavone*, the district court's determination in this case "was not based solely on the physically violent death and injuries of the [V]ictim[s] or on the elements of the crime. Rather, it was based on Defendant's indifference to the [V]ictim['s] condition and to [their] vulnerability to oncoming traffic." *Id.* Here, Defendant never stopped his truck, he left the victims in the roadway and exposed them to the risk of further injuries. The district court referred to the evidence presented during trial to support this finding of recklessness. In *Lavone*, the district court stated that "[a]lthough [the d]efendant's recklessness occurred immediately after the accident rather than before it[,]" that fact does not change the conclusion. *Id.* We conclude the same here. Defendant's recklessness after the collision is enough to make a determination that the offenses were serious violent offenses and does not amount to reliance on the same elements of the crimes. We therefore conclude that the district court appropriately acted within its discretion in determining that Defendant's offenses were serious violent offenses.

## II.     The District Court Did Not Abuse its Discretion When it Did Not Allow the Jury to Review a Witness's Audio Recorded Trial Testimony

**{18}** Defendant argues the district court abused its discretion in denying the jury's request to review witness testimony. During its deliberations, the jury sent a note to the district court asking, "Can we have the transcripts of yesterday[']s testimony by Roslind Archuleta on touch DNA?" Transcripts were not available and after conferring with the parties, the district court decided against providing the available audio recording of Archuleta's testimony. The district court then responded in writing, "[t]ranscripts of the testimony are not available. You should rely on your memory of the testimony."

**{19}** The decision to have testimony read to the jurors once they have retired to consider their verdict, is in the discretion of the court. Rule 5-610(A) NMRA; *State v. Montoya*, 1974-NMCA-044, ¶ 8, 86 N.M. 316, 523 P.2d 814 ("The matter must be left in the sensitive discretion of the trial judge." (internal quotation marks and citation omitted)). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

**{20}** Upon receiving the jury's inquiry, the district held a conference with the parties. The district court allowed both parties to state their preference as to how to handle the jury's inquiry. The State suggested the jury should be instructed to rely on their own memory, while Defendant preferred the testimony be replayed in its entirety. In response, the district court reasoned that the court did not have "real great speakers"; that the entire court staff would have to be present; that Archuleta's testimony lasted approximately one-and-a-half to two hours; and that it was hesitant to create a situation where the entire trial would end up being replayed for the jury. The district court further stated that "[the jurors] were instructed that they needed to pay close attention." Thus, Defendant's request to have the entire testimony replayed was denied. We cannot say that the district court's ruling is clearly against the logic and effect of the facts and circumstances of the case, given the length of the recording, that the jury had already heard from the witness, and the district court's concern that the replay of the recording would be of limited value because of the poor sound system in the courtroom. We find no error of the district court's denial of the jury's request.

**{21}** Defendant further argues that the district court's response to the jury's request for the transcript communicated to the jurors that (1) "the court wanted the jury to hurry and finish its deliberations"[;] and (2) "that enough time had been spent on the case." Defendant asserts that "jurors apparently could not agree" and that "at least one juror had sufficient doubt about who was driving [at the time of the crash]," thus the need for the transcript. Other than Defendant's bald contentions, he does not point us to any facts in the record to support his arguments. *See Muse v. Muse*, 2009-NMCA-003, ¶ 51, 145 N.M. 451, 200 P.3d 104 ("The mere assertions and arguments of counsel are not evidence."); *see also* Rule 12-318(A)(3) NMRA (requiring briefs in chief to contain "a summary of the facts relevant to the issues presented for review[, which] summary *shall contain citations to the record proper, transcript of proceedings or exhibits supporting each factual representation*" (emphasis added)).

**{22}** While the district court's decision was not the only course available, the facts of this case do not support Defendant's position that the district court abused its discretion when it declined to replay the witness's testimony in its entirety. We affirm the district court's decision.

### III.    Defendant Failed to Preserve the Jury Instruction Issue

**{23}** Defendant asserts that the district court erred by modifying UJI 14-6020 NMRA ("final instruction") when reading it to the jury. Defendant points out that the district court read the final sentence of the instruction first, and then excused the alternate jurors before reading the remainder of the "[f]inal instructions" to the "regular jury members." Defendant contends that counsel "attempted to address the beginning of the instruction that had been inexplicably omitted[,]" however, claims the district court "stopped defense counsel from speaking" and that "[b]ased on this admonishment," counsel did not attempt to make any further comment or a more formal objection. Defendant does not ask us to alternatively review this issue for fundamental error.

**{24}** "In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." *State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 (internal quotation marks and citation omitted). A failure to object at trial to jury instructions constitutes a waiver of errors that might have been committed. *See State v. Roybal*, 1960-NMSC-012, ¶ 6, 66 N.M. 416, 349 P.2d 332. Preservation serves three primary purposes. *See State v. Bell*, 2015-NMCA-028, ¶ 2, 345 P.3d 342. First, preservation allows the [district] court an opportunity to cure claimed errors. *Id.* Second, it allows "the opposing party a fair opportunity to respond to the claim of error and to show why the [district] court should rule against that claim." *Id.* (alteration, internal quotation marks, and citation omitted). Third, it creates a record from which the appellate court may "make an informed decision." *Id.*

**{25}** A review of the record shows that immediately following closing arguments, the district court identified the two alternates, thanked them for their service, gave instructions about next steps, and then excused them from the courtroom. Immediately following these instructions to the alternates, the following brief colloquy takes place:

| | |
|---|---|
| Counsel: | Excuse me Judge, we need the final description. |
| Judge: | I know. I have my jury here. |
| Counsel: | Alright, I'm sorry. |

The district court then immediately proceeded to read the remainder of the "final instructions" to the remaining jurors. Counsel's interjection and subsequent apology, does not rise to the level of an objection sufficient to preserve the argument that the district court erred by reading the jury instruction out of order on appeal. *See Montoya*, 2015-NMSC-010, ¶ 45 (explaining that to preserve an issue, the defendant's objection must apprise the district court of the nature of the claimed error). Defendant's statement, reminding the court that the remainder of the jury instruction needed to be given to the jurors, did not create a clear objection stating the grounds for the objection to be preserved. *See State v. Barraza*, 1990 NMCA-026, ¶ 16, 110 N.M. 45, 791 P.2d 799 (stating that "an objection that does not state the grounds for the objection preserves no issue for appeal"). Defendant therefore failed to preserve any error for our review and we therefore decline to review it. *See State v. Leon*, 2013-NMCA-011, ¶ 33, 292 P.3d 493 ("We generally do not consider issues on appeal that are not preserved below." (internal quotation marks and citation omitted)).

**CONCLUSION**

**{26}** For the aforementioned reasons, we affirm the district court.

**{27} IT IS SO ORDERED.**

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**MEGAN P. DUFFY, Judge**